Argued and submitted November 7, 1988, reversed and remanded March 8, reconsideration denied April 28, petition for review denied June 13, 1989 (308 Or 142)

## K.R.A.M. CORPORATION,
*Respondent,*

*v.*

## CITY OF VERNONIA,
*Appellant.*

(23801; CA A47577)

770 P2d 77

David G. Frost, Hillsboro, argued the cause for appellant. With him on the briefs was Frost and Kohl, Hillsboro.

Robert J. Groce, Beaverton, argued the cause and filed the brief for respondents.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendant city appeals from a judgment for plaintiff in this breach of contract action arising out of defendant's revocation of 53 sewer connection permits that it had issued to plaintiff. The trial court granted plaintiff's motion for partial summary judgment on the issue of liability, and a jury later awarded damages to plaintiff. Defendant's only assignment is that the court erred when it granted the partial summary judgment.[1]

The facts are not disputed, and we quote the statement of facts from defendant's brief:

"1.  Defendant is a municipal corporation and maintains a sewerage system within its jurisdiction.

"2.  Plaintiff was the owner of real property within the jurisdiction of defendant and intended to construct a residential development which would require sewer permits.

"3.  Early in 1977 the Oregon Department of Environmental Quality notified defendant that it would be allowed a maximum of 770 sewer connections to its sewer system.

"4.  On May 27, 1977 plaintiff purchased 55 sewer connection permits which was the total of the remaining sewer connections which could be allowed under the Department of Environmental Quality order.

"5.  The purchase by plaintiff of the sewer permits was under Ordinance No. 482 adopted by the City on December 2, 1974. This Ordinance contained no time limitation for use of the permits and was silent as to whether permits could be revoked.

"6.  On September 9, 1977 defendant adopted Ordinance No. 515 which repealed Ordinance No. 482. Ordinance 515 provided (a) council approval of the issuance of 5 or more permits within a 30 day period, (b) that sewer connection permits would expire 120 days from the date of issuance unless, within that period, construction had begun on the project requiring the permit, and (c) upon termination of permits the City would refund 95% of the permit fee. The Ordinance contained findings that: (a) sewer facilities for the City

---

[1] Defendant also moved for summary judgment on the question of liability, and that motion was denied.

of Vernonia had reached [their] capacity; (b) there are presently more applicants than there are sewer connection permits available and (c) immediate plans must be formulated to permit the orderly and equitable distribution of the remaining permits.

"7.   On November 7, 1977 the City Engineer reported to the council that plaintiff had begun construction on only two of the lots for which permits had been previously issued to plaintiff. The City Council then revoked 53 of the 55 sewer permits."

Although the parties do not state the question presented on appeal in precisely the same way, both regard the central issue as being whether, as a matter of law, the permits "are contractual in nature or are licenses granted under the police power which may be revoked." We do not agree with that formulation of the controlling legal question. Whether or not the mere *issuance* of a permit gives rise to contract rights in the permittee, *compare Hugie v. City of Shady Cove,* 85 Or App 229, 736 P2d 567, *rev den* 303 Or 699 (1987),[2] the question remains whether regulations that a city enacts concerning permits or the permitted activity are applicable to permits that the city issued before it adopted the regulations.

In *Twin Rocks Watseco v. Sheets,* 15 Or App 445, 516 P2d 472 (1973), *rev den* (1974), we stated:

"In general, a permit or license does not create irrevocable rights, but, instead, is subject to modification or revocation by subsequent changes in law. E.g., *Asbury Hospital v. Cass County,* 72 ND 359, 7 NW 2d 438 (1943); *Railway Exp. Agency v. Commerce Com.,* 374 Ill 151, 28 NE2d 116 (1940); *see generally,* 51 Am Jur2d 133, Licenses and Permits § 145.

"Oregon cases are in accord. In *Portland v. Cook,* 48 Or 550, 87 P 772, 9 LRA (ns) 733 (1906), defendants were prosecuted for violating an ordinance prohibiting maintaining a slaughterhouse. They defended on the grounds that an earlier ordinance had granted them the right to operate a slaughterhouse. The Supreme Court held the rights created by the

---

[2] The parties discuss *City of Stanfield v. Burnett et al,* 222 Or 427, 353 P2d 242 (1960), *overruled on other grounds, Aloha Sanitary Dist. v. Wilkens,* 245 Or 40, 420 P2d 74 (1966), and *Hayes v. City of Albany,* 7 Or App 277, 490 P2d 1018 (1971). Those cases are not in point. The "contracts" to which they refer related to sewer connection or use charges, which the court in *City of Stanfield* described as "charge[s] for a service rendered" by municipalities. 222 Or at 435. They have no bearing on contract rights of a permittee or user.

earlier ordinance were subject to modification or revocation by the later ordinance. *See also, Daniels v. City of Portland et al,* 124 Or 667, 265 P 790, 59 ALR 512 (1928), in which it was held that a property owner who built in compliance with existing requirements had to nevertheless comply with additional requirements enacted after the building was completed.

"Turning to the specifics of building permits and zoning laws, the commentators state:

'It is generally held that neither the filing of an application for a building permit nor the issuance of a building permit, although valid and issued in conformity with the provisions of the zoning ordinance, alone confers any rights in the applicant or permittee as against a change in the zoning ordinance which imposes further limitations upon the use or structure proposed. * * *

'Where the landowner has done nothing subsequent to obtaining the permit, he is usually held to be bound by any change in the zoning ordinance even if its effect is to nullify the permit.' (Footnotes omitted.) 2 Rathkopf, The Law of Zoning and Planning 57-2 to 57-4, § 1 (3d ed 1966).

'The general rule is that permits for buildings and businesses are not per se protected against revocation in effect by subsequent enactment or amendment of zoning laws prohibiting the building, business or use for which they have been issued. That is to say, a municipality may revoke a permit where zoning is enacted or changed to prohibit the use and where the permittee has not materially changed his position in reliance on the permit. Otherwise stated, the legality of a use is determined by the zoning law governing at the time of its commencement, not by the zoning law prevailing when a permit issues * * *.' 8 McQuillin, Municipal Corporations 497, § 25.156 (3d ed 1965)." 15 Or App at 448.

*See also Lemke v. Lane County,* 57 Or App 55, 58 n 2, 643 P2d 1306, *rev den* 293 Or 394 (1982). The same principles are as applicable to the connection permits here as to the permits which were involved in the cited cases. *See* 11 McQuillin, *Municipal Corporations* 212, § 31.29 (3rd ed, 1983 rev); *see also Pearson v. Twohy Bros. et al,* 113 Or 230, 240, 231 P 129 (1925).

We conclude that defendant's issuance of the permits gave plaintiff no contract rights that precluded the application of the later ordinance to them. We emphasize that, although

plaintiff suggests that the city's action was confiscatory and improper, this is a breach of contract action and presents no issue except whether plaintiff is entitled to contract damages.

Reversed and remanded.