On respondent's motion to determine jurisdiction filed April 10, 2006,
motion granted; judicial review to proceed; record to be filed within 28 days
of the date of this opinion January 31, motion for reconsideration
granted by opinion May 9, 2007
See 212 Or App 536, _____ P3d _____ (2007)

Virginia COREY;
Bergis Road, LLC;
and Bernita Johnston,
*Petitioners,*

*v.*

DEPARTMENT OF LAND CONSERVATION
AND DEVELOPMENT,
*Respondent.*

Department of Land Conservation
and Development
M119478; A129905

152 P3d 933

Hardy Myers, Attorney General, Mary H. Williams,
Solicitor General, and Denise G. Fjordbeck, Senior Assistant
Attorney General, for motion.

Before Wollheim, Presiding Judge, and Schuman and Rosenblum, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Petitioners seek judicial review of an order issued by respondent, the Department of Land Conservation and Development (DLCD), opting to waive enforcement of certain land use regulations in lieu of paying compensation under ORS 197.352 (Ballot Measure 37). Petitioners have also sought judicial review in the circuit court. In response, DLCD filed a motion in this court seeking a summary determination of which court has jurisdiction to review the order. We grant the motion and determine that we have jurisdiction.

Petitioners Virginia Corey and Bergis Road, LLC, each own undivided one-third interests in a 23-acre parcel of land located in rural Clackamas County. In January 2005, they filed a claim seeking $4,985,000 in compensation for the asserted reduction in the fair market value of their property caused by land use regulations restricting its use. ORS 197.352(1).[1] DLCD determined that application of those laws to petitioners' property would result in a loss of fair market value and, on that basis, that petitioners had a valid claim under Measure 37. In lieu of paying compensation, DLCD decided to forgo applying certain land use regulations affecting petitioners' use of their property, as permitted by ORS 197.352(8).[2] The agency also determined, however, that each petitioner's use of the property would remain subject to certain regulations because the statute required waiver only insofar as necessary to allow "the owner to use the property for a use permitted at the time the owner acquired the property." *Id.* Petitioners do not agree with DLCD's determination of which regulations need to be waived, and they consequently

---

[1] ORS 197.352(1) provides:

"If a public entity enacts or enforces a new land use regulation or enforces a land use regulation enacted prior to December 2, 2004, that restricts the use of private real property or any interest therein and has the effect of reducing the fair market value of the property, or any interest therein, then the owner of the property shall be paid just compensation."

[2] ORS 197.352(8) provides:

"[I]n lieu of payment of just compensation under this section, the governing body responsible for enacting the land use regulation may modify, remove, or not to apply [*sic*] the land use regulation or land use regulations to allow the owner to use the property for a use permitted at the time the owner acquired the property."

seek judicial review. The question now before us on DLCD's motion is where jurisdiction for judicial review of DLCD's order lies.

That question might be resolved by one of several statutes. One possibility is ORS 183.482, which vests jurisdiction for judicial review of orders in contested cases in this court. Whether that statute applies depends on whether the proceeding before DLCD should have been treated as a contested case[3] as defined by ORS 183.310(2)(a):

" 'Contested case' means a proceeding before an agency:

"(A)   In which the individual legal rights, duties or privileges of specific parties are required by statute or Constitution to be determined only after an agency hearing at which such specific parties are entitled to appear and be heard;

"(B)   Where the agency has discretion to suspend or revoke a right or privilege of a person;

"(C)   For the suspension, revocation or refusal to renew or issue a license where the licensee or applicant for a license demands such hearing; or

"(D)   Where the agency by rule or order provides for hearings substantially of the character required by ORS 183.415, 183.425, 183.450, 183.460 and 183.470."

Subparagraphs (B) and (C) clearly do not apply, because DLCD did not have authority to suspend, revoke, or refuse to renew anything. Subparagraph (D) does not apply, because the procedure that DLCD employed to deal with petitioners' claim bears no resemblance to a hearing as required by the statutes cited in that subparagraph, that is, an Administrative Procedures Act contested case hearing with notice by personal service, live testimony under oath, depositions, cross-examination of witnesses, and a decision based exclusively on the record. Rather, the rules governing DLCD's

---

[3] DLCD argues that, because petitioners did not receive a contested case hearing, this court does not have jurisdiction. However, whether an order should be reviewed by this court as an order in a contested case depends on whether petitioners were *entitled* to a contested case hearing, regardless of whether they received one, with this court making the determination of entitlement. *Patton v. St. Bd. Higher Ed.*, 293 Or 363, 366-67, 647 P2d 931 (1982); *Wheaton v. Kulongoski*, 209 Or App 355, 361, 147 P3d 1163 (2006).

treatment of Measure 37 claims, OAR 125-145-0030 to 125-145-0100, provide only for written comment and no other procedural formalities. Thus, the only arguably relevant subparagraph is (A), under which a proceeding is a contested case if it is one "[i]n which the individual legal rights, duties or privileges of specific parties are required by statute or Constitution to be determined only after an agency hearing at which such specific parties are entitled to appear and be heard." Further, as no statute requires notice and a hearing, and the Oregon Constitution contains no provision guaranteeing procedural rights in noncriminal cases, the question reduces to this: Does anything in the United States Constitution require DLCD to provide a Measure 37 claimant with notice and a hearing before DLCD decides not to waive certain land use regulations for the benefit of the claimant?

Before a governmental entity applies pre-existing legislative or quasi-legislative standards in such a way as to deprive a person (or small group of persons) of an interest in property, the Due Process Clause of the Fourteenth Amendment requires the government to provide notice and a meaningful opportunity to be heard. *Bi-Metallic Investment Company v. State Board of Equalization*, 239 US 441, 445, 36 S Ct 141, 60 L Ed 372 (1915); *Londoner v. Denver*, 210 US 373, 386, 28 S Ct 708, 52 L Ed 1103 (1908). DLCD is a governmental entity; Measure 37 is a pre-existing legislative standard; petitioners are a small group of people. The question whether they were entitled to notice and a hearing, then, reduces to whether or not DLCD purported to deprive them of a property interest.

Petitioners' interest in this case is not property in the traditional sense; DLCD is not attempting to deprive them of their actual real estate. Rather, what is at stake for petitioners here is their interest in a waiver of regulations that will result in an expansion of permissible uses of their land. That fact, however, does not necessarily mean that petitioners have no property interest. In a number of cases beginning with *Goldberg v. Kelly*, 397 US 254, 90 S Ct 1011, 25 L Ed 2d 287 (1970), the United States Supreme Court expanded the definition of constitutionally protected property interests beyond tangible real estate and objects. The "new property" includes certain governmental benefits to

which an individual has a legitimate claim of entitlement. As the Court explained in *Bd. of Regents of State Colleges v. Roth*, 408 US 564, 577, 92 S Ct 2701, 33 L Ed 2d 548 (1972):

> "Property interests * * * are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Thus, the welfare recipients in [*Goldberg v. Kelly*] had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them."

Thus, at least since 1972, to determine whether a particular interest amounts to constitutionally protected property, we look to state law and ask whether that law entitles certain persons to specific benefits. We have no difficulty concluding that Measure 37 creates, in some real property owners, a claim of entitlement either to compensation or to the waiver of restrictive regulations.

However, that does not end our inquiry. *Goldberg*, *Roth*, and other United States Supreme Court cases dealing with procedural due process left unanswered for many years the question whether persons (such as petitioners here) initially *applying for* a benefit, as opposed to persons who have already qualified for a benefit, have a claim of entitlement to that benefit. Some language in *Roth* suggests that applicants for benefits, as well as possessors of them, have an entitlement: "The recipients [in *Goldberg*] had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so." *Roth*, 408 US at 577. A number of scholars argued that the law created an entitlement to a benefit whenever the law spelled out nondiscretionary criteria, the attainment of which qualified an applicant to receive the benefit, even when the person seeking the benefit was an applicant and not an established possessor.[4] Many cases from the state and lower federal courts reached the same conclusion.[5] But the Supreme Court never espoused that theory,

---

[4] *See, e.g.*, 3 Ronald E. Rotunda and John D. Nowak, *Treatise on Constitutional Law, Substance and Procedure* § 17.5, 71-72 (3d ed 1999); Lawrence H. Tribe, *American Constitutional Law* 686-90 (2d ed 1988).

[5] *See, e.g.*, *Washington Legal Clinic for the Homeless v. Barry*, 107 F3d 32, 36 (DC Cir 1997); *Griffeth v. Detrich*, 603 F2d 118, 120-21 (9th Cir 1979), *cert den*, 445

and, in fact, it later repudiated its *dictum* from *Roth* and rejected the theory outright.

That occurred in *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 US 40, 119 S Ct 977, 143 L Ed 2d 130 (1999) (*Sullivan*). Applicants for workers' compensation benefits challenged the constitutional adequacy of procedures used by the state to determine the validity of their claims. The Court held that the applicants did not have a constitutionally protected interest in the benefits:

"In [both *Goldberg* and *Mathews v. Eldridge*, 424 US 319, 332, 96 S Ct 893, 47 L Ed 2d 18 (1976)], an individual's entitlement to benefits had been established, and the question presented was whether predeprivation notice and a hearing were required before the individual's interest in *continued* payment of benefits could be terminated.

"Respondents' property interest in this case, however, is fundamentally different. * * * [F]or an employee's property interest in the payment of medical benefits to attach under state law, the employee must clear two hurdles: First, he must prove that an employer is liable for a work-related injury, and second, he must establish that the particular medical treatment at issue is reasonable and necessary. Only then does the employee's interest parallel that of the beneficiary of welfare assistance in *Goldberg* and the recipient of disability benefits in *Mathews*.

"Respondents obviously have not cleared both of these hurdles. While they indeed have established their initial *eligibility* for medical treatment, they have yet to make good on their claim that the particular medical treatment they received was reasonable and necessary. Consequently, they do not have a property interest—under the logic of their own argument—in having their providers pay for treatment that has yet to be found reasonable and necessary. To state the argument is to refute it[.]"

*Sullivan*, 526 US at 60-61 (emphasis in original). The teaching of *Sullivan*, then, is that a person obtains a protected

US 970 (1980); *Wright v. Califano*, 587 F2d 345, 354 (7th Cir 1978); *Like v. Carter*, 448 F2d 798, 804 (8th Cir 1971), *cert den*, 405 US 1045 (1972); *Holmes v. New York City Housing Authority*, 398 F2d 262, 265 (2d Cir 1968); *Giaimo v. City of New Haven*, 257 Conn 481, 509, 778 A2d 33 (2001); *Buffelen Woodworking Co. v. Cook*, 28 Wash App 501, 625 P2d 703, 706 (1981).

property interest in a benefit only when the person has actually proven that he or she is fully entitled to it; only at that point must denial be accompanied by due process. In reaching that conclusion, the Court appears to emphasize that the line is drawn so as to exclude mere applicants. Under that reading of the case, petitioners here would have no protected property interest in the waiver because they have not yet established that they are entitled to it. Consequently, they would have no right to notice and a hearing under the United States Constitution and no right to a contested case hearing under ORS 183.482.

Were we writing on a clean slate, we might interpret *Sullivan* as described above. However, we are not free to apply the United States Supreme Court's interpretation of the Fourteenth Amendment as we see fit when our own Supreme Court has applied it otherwise. That has happened here.

In *Koskela v. Willamette Industries, Inc.*, 331 Or 362, 15 P3d 548 (2000), the claimant was injured on the job and submitted a claim for workers' compensation benefits. His employer accepted the claim, and, after surgeries, the plaintiff's physician declared him to be medically stationary. That, in turn, "triggered the claim closure process conducted by the Department of Consumer and Business Services." *Id.* at 365-66. That process resulted in the claimant receiving 29 percent permanent *partial* disability (PPD) benefits. The claimant, however, believed that the process should have resulted in a finding that he was permanently *totally* disabled. On judicial review, he argued that the claim closure process was flawed because it did not allow him the procedural protections required by the Due Process Clause. *Id.* at 367-68. The issue before the Supreme Court was whether that clause entitled the claimant to present evidence on all aspects of the claim, to rebut adverse evidence, and to cross-examine adverse witnesses. *Id.* at 368.

To resolve that question—"How much process is due?"—the court first had to decide whether the claimant had a constitutionally protected property interest in the benefit that he sought. If he did, then the court had to decide

whether the procedures provided by statute adequately protected that interest. It is the first question that is relevant to our inquiry here because the dispositive question in this case is not how much process petitioners are entitled to but whether they are entitled to any process at all.

The court held that the claimant had a protected property interest in the benefits, even though he had not fully qualified for them. That outcome seems to contradict *Sullivan*, which, as noted, held that a workers' compensation claimant does not have a property interest in benefits until the person has established entitlement. The court had to distinguish *Sullivan*, and it did so as follows:

> "According to employer, workers' compensation claimants in Oregon do not have a protected property interest in permanent disability benefits until they establish through the claim closure process that they are entitled to receive such benefits. Underlying employer's argument is the assumption that workers have no property interest in benefits until they meet their burden of demonstrating the extent of their permanent disability. *See* ORS 656.266 (setting out burden). That assumption misapprehends the nature of a worker's property interest and the purpose of the claim closure process.

> "In Oregon * * * a claimant needs to clear only one hurdle to establish entitlement to compensation benefits. Acceptance of a claim signifies that the worker has met the burden of proving a compensable injury. The claim closure process begins after a claim has been accepted and a claimant has been declared medically stationary. The purpose of claim closure is to 'determine the *extent* of the worker's permanent disability,' ORS 656.268(1) (emphasis added), not, as employer would have it, the worker's *entitlement* to compensation. Because a claimant whose claim has been accepted is entitled to receive workers' compensation benefits, that claimant has a protected property interest in receiving compensation. *Sullivan* is not a barrier to reaching claimant's constitutional challenge in this case."

*Id.* at 370-71 (emphasis in original; citations omitted). According to the court, then, the *Sullivan* claimants had no property interest because, under Pennsylvania law, they had not established that their medical expenses were both work-related and reasonable and necessary. *See Sullivan*, 526 US

at 61. The claimant in *Koskela*, however, *had* met all of the prerequisites for benefits. That occurred when his claim was accepted. *Koskela*, 331 Or at 371. What he had *not* established was only the *extent* of the benefits. *Id.*

Thus, under *Sullivan* as interpreted in *Koskela*, there is an important difference between establishing initial general qualification for, or entitlement to, benefits under a government program such as workers' compensation, and establishing qualification for, or entitlement to, a particular quantity or extent of benefits within that program. Nobody has a property interest in gaining admission; once admitted, a property interest in the extent of benefits arises. Thus, the claimant in *Koskela*, having been accepted as a workers' compensation recipient, was entitled to a due process hearing to determine whether he qualified for permanent total disability benefits. *Id.*

Applying *Koskela* to this case leads inexorably to the conclusion that petitioners here have a property interest in the waivers. Like the claimant in *Koskela*, petitioners' claim was accepted. That happened when DLCD determined that laws and rules currently in effect reduced the fair market value of petitioners' property relative to how the property could have been used at the time that petitioners or a family member acquired the property.[6] *Final Staff Report and Recommendation, Claim No. M119478*, 2 (July 20, 2005) (DLCD staff "has determined that the claim is valid"); *id.* at 9 (staff "recommends that the claim be approved"); *Final Order, Claim No. M119478*, 1 (approving claim; accepting Final Report). Thus, the part of DLCD's decision of which petitioners seek judicial review does not deal with petitioners' entitlement to a remedy; it deals, like the claimant's claim for permanent total disability in *Koskela*, only with the *extent* of the remedy. Put another way: Just as the Department of Consumer and Business Services in *Koskela* created an entitlement to benefits—including the disputed permanent *total* disability benefits—when it accepted the claimant's claim in *Koskela*, so too did DLCD create an entitlement

---

[6] As DLCD points out, the determination did not amount to acceptance of a claim *for compensation*. It amounted only to acceptance of a claim for either compensation or application of some exception to the right to compensation.

to benefits—including the disputed waivers—when it accepted petitioners' Measure 37 claim. That being the case, petitioners have a protected property interest in the waivers. *Roth*, 408 US at 577. Consequently, they were entitled to notice and a meaningful hearing before DLCD could deny them the waivers. *Londoner*, 210 US at 386. It necessarily follows that, under ORS 183.310(2)(a), the DLCD procedure should have been conducted as a contested case, and therefore, under ORS 183.482, jurisdiction for judicial review lies in this court. *Patton*, 293 Or at 366-67.

Motion granted; judicial review to proceed; record to be filed within 28 days of the date of this opinion.