Argued and submitted February 27, petition for review dismissed as moot; motion to vacate and remand denied May 8, 2008

See 221 Or App 505, 190 P3d 493 (2008)

Virginia COREY,
Bergis Road, LLC,
and Bernita Johnston,
*Respondents on Review,*

*v.*

DEPARTMENT OF LAND CONSERVATION
AND DEVELOPMENT,
*Petitioner on Review.*

(DLCD M119478; CA A129905; SC S054995)

184 P3d 1109

Denise G. Fjordbeck, Senior Assistant Attorney General, Salem, argued the cause and filed the petition and motion to vacate and remand for petitioner on review. With her on the motion were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Gregory A. Chaimov, of Davis Wright Tremaine LLP, Portland, argued the cause and filed the reply to the motion for respondents on review. With him on the reply was Donald P. Roach, Portland.

Kristian Roggendorf, of O'Donnell Clark & Crew LLP, Portland, argued the cause and filed the response for *amici curiae* Gerald and Roberta Curry, husband and wife, George Raymond Smith, individually and as controlling member of The Raymond Smith, LLC, and as trustee for the Raymond Smith Survivor's Trust, Raymond Smith Qualified Marital Trust, and Raymond Smith Family Trust, and Shirlee Lenske, as controlling member of Lenske Properties, LLC. With her on the response were Stephen F. Crew, and D. Dan Chandler, Special Counsel for *amici*.

James Zupancic, Lake Oswego, filed a brief for *amici curiae* The Harold V. Olson and Sarajean Olson Revocable Living Trust, James and Virginia Carlson, and George and Earlene Hansen.

Before De Muniz, Chief Justice, and Gillette, Durham, Balmer, Kistler, and Linder, Justices.**

GILLETTE, J.

---

** Walters, J., did not participate in the consideration or decision of this case.

**GILLETTE, J.**

This proceeding arises out of a land use case. In that case, the Department of Land Conservation and Development (DLCD) sought review of the Court of Appeals decision in *Corey v. DLCD*, 210 Or App 542, 152 P3d 933, *adh'd to*, 212 Or App 536, 159 P3d 327 (2007), a case decided under Ballot Measure 37 (2004) (Measure 37). We allowed DLCD's petition for review. However, DLCD now believes that the recent passage of Ballot Measure 49 (2007) rendered *Corey* moot. It therefore asks this court to dismiss its petition and to vacate the decision of the Court of Appeals. Plaintiffs, who are landowner parties in *Corey*, deny that that decision is moot. As we discuss below, we agree with DLCD that *Corey* is moot, and we dismiss DLCD's petition for review on that ground. However, we deny DLCD's request that we vacate the decision of the Court of Appeals.

Measure 37 was adopted through the initiative process in the 2004 general election and was codified at ORS 197.352 (2005), amended by Ballot Measure 49, Oregon Laws 2007, chapter 424, section 4, and renumbered as ORS 195.305. It required public entities that enact and enforce land use regulations to pay a landowner whose property is affected by any such regulations "just compensation," which the statute generally defined as an amount equal to the "reduction in the fair market value of the affected property interest" resulting from enforcement of any land use regulation enacted after the date of acquisition of the property by the landowner or a family member of the landowner. ORS 197.352(1) - (3) (2005). The provision authorized affected landowners to make a "written demand for compensation" to the regulating entity, ORS 197.352(5), and stated that the compensation "shall be due" when and if the land use regulations at issue continue to be enforced 180 days after the landowner made his or her written demand, ORS 197.352(4) (2005).

Plaintiffs in this case are Virginia Corey and Bergis Road, LLC, a limited liability corporation that is wholly owned and controlled by Corey's sister, Bernita Johnston. Plaintiffs own interests in a 23-acre parcel of land in rural Clackamas County. Early in 2005, they filed a written

demand under Ballot Measure 37, seeking compensation from DLCD for reduction in the fair market value of that land caused by application of, among other things, Statewide Planning Goals 3 (Agricultural Lands) and 14 (Urbanization). In the demand, plaintiffs asserted that Corey and Johnston had inherited their interests in the land from their mother in 1978. They further asserted that their demand for compensation properly extended to all regulations enacted after 1973—the year that Corey's and Johnston's mother first acquired the property.[1]

DLCD issued a final order resolving plaintiffs' demand in July 2005. In the order, DLCD chose to waive enforcement of certain of the land use regulations to which plaintiffs objected, rather than to compensate plaintiffs for the effects of those regulations on the value of their property.[2] However, the waiver that DLCD granted did not extend to all of the regulations that plaintiffs had targeted in their claim: For plaintiff Corey, DLCD waived land use regulations and statutes enacted after December 11, 1978, which it found to be the date when Corey inherited her interest in the property from her mother; and for plaintiff Bergis Road LLC, DLCD waived regulations and statutes enacted after August 12, 2004, when that entity acquired its interest in the property from Virginia Johnston. In announcing those waiver dates, DLCD implicitly rejected plaintiffs' contention that, because Bernita Johnston is the sole creator, member, and manager of Bergis Road LLC, her transfer of her interest in the property to that entity should be ignored for purposes of Measure 37.[3]

Plaintiffs sought judicial review of DLCD's final order in the Court of Appeals. However, before the case was

---

[1] Under ORS 197.352(3)(E) (2005), compensation is not due for any diminution in the value of the property resulting from a land use regulation "[e]nacted prior to the date of acquisition of the property *by the owner or a family member of the owner who owned the subject property prior to acquisition or inheritance by the owner, whichever occurred first.*" (Emphasis added.)

[2] Under ORS 197.352(8) (2005), public entities may choose to waive (*i.e.* "modify, remove, or not [ ] apply") a land use regulation "in lieu of payment of just compensation."

[3] DLCD apparently also rejected plaintiffs' contention that the land was not "agricultural land" and, thus, was not subject to Statewide Planning Goal 3 at the time that they acquired their interests in it.

briefed or argued, DLCD filed a "Motion to Determine Juris-diction." In its motion, DLCD explained that plaintiffs had filed a parallel petition for judicial review in the circuit court and that it was necessary to determine which court had juris-diction to review DLCD's final order. DLCD's position was that, because no statutory or constitutional provision con-ferred a right to a contested case hearing in Ballot Measure 37 cases, plaintiffs were not seeking judicial review of a final order in a "contested case" under ORS 183.482 and, there-fore, they could not proceed in the Court of Appeals. Instead, DLCD argued, review of the DLCD order must proceed under provisions of the Administrative Procedures Act pertaining to review of "orders other than contested cases," ORS 183.484, which would be in "the Circuit Court for Marion County [or] the circuit court for the county in which the peti-tioner resides or has a principal business office."

The Court of Appeals granted DLCD's motion to determine jurisdiction and then announced that, contrary to DLCD's position, the order at issue *should* have been an order in a contested case and, therefore, was subject to judi-cial review in the Court of Appeals. *Corey*, 210 Or App at 552. The court reasoned that, although Measure 37 did not itself provide for a contested case hearing, once DLCD accepted plaintiffs' claim as valid, the Due Process Clause of the Four-teenth Amendment required it to offer plaintiffs a contested case-type hearing to determine the appropriate extent of the waiver. And, the Court of Appeals concluded, because DLCD should have employed contested case procedures, judicial review was available in the Court of Appeals under the pro-vision of the Administrative Procedures Act pertaining to review of orders in contested cases (ORS 183.482). 210 Or App at 549-52.[4]

DLCD sought review of that decision in this court, challenging the ultimate jurisdictional holding and the underlying proposition that a contested case hearing is required to determine the scope of compensation (or waiver) whenever a public agency accepts a Measure 37 claim as

---

[4] The Court of Appeals relied on this court's analysis in *Koskela v. Willamette Industries, Inc.*, 331 Or 362, 15 P3d 548 (2000), to reach that conclusion. We express no opinion as to the correctness of that reliance.

valid. As noted, we allowed DLCD's petition for review in October 2007.

One month later, in the November 2007 general election, the voters adopted Ballot Measure 49 (2007) (Measure 49), which amended Measure 37 and added provisions that altered the claims and remedies available to landowners whose property values are adversely affected by land use regulations. Of particular relevance here, Measure 49 directly addresses Measure 37 claims filed before the end of the 2007 legislative session. Section 5 of Measure 49 provides:

> "A claimant that filed a claim under ORS 197.352[, *i.e.,* Measure 37,] on or before the date of adjournment sine die of the 2007 regular session of the Seventy-fourth Legislative Assembly is entitled to just compensation as provided in:

> "(1)   Sections 6 or 7 of this 2007 Act, at the claimant's election, if the property described in the claim is located entirely outside any urban growth boundary and entirely outside the boundaries of any city;

> "(2)   Section 9 of this 2007 Act if the property described in the claim is located, in whole or in part, within an urban growth boundary; or

> "(3)   A waiver issued before the effective date of this 2007 Act to the extent that the claimant's use of the property complies with the waiver and the claimant has a common law vested right on the effective date of this 2007 Act to complete and continue the use described in the waiver."

Sections 6 and 7, referenced in subsection 5(1), generally provide that claimants whose claims relate to land *outside* any urban growth boundary are limited to three home site approvals, unless their land is not high value farm or forest land, in which case they *may* be eligible for up to ten home site approvals, if certain requirements are met. Section 9, referenced in subsection 5(2), sets out a different remedy for claims relating to land within an urban growth boundary.

Soon after Measure 49 was adopted, DLCD filed a "Notice of Potential Mootness" in this court respecting the impending review of *Corey*. Later, DLCD filed the present motion to "vacate and remand," arguing that Measure 49 has

rendered the controversy in *Corey* moot. In the motion, DLCD relies on the provisions quoted and summarized above and on section 8 of Measure 49, which provides procedures and deadlines for refiling Measure 37 claims under Measure 49.[5] In essence, DLCD argues that Measure 49 extinguishes all claims and orders under Measure 37 and directs Measure 37 claimants—successful or not—to proceed instead under section 6 or 7 of Measure 49, if their property lies outside an urban growth boundary, and under section 9, if their property lies inside an urban growth boundary.[6] Consequently (in DLCD's view), any controversy regarding the correctness of an order issued under Measure 37—including the proper forum for reviewing the order—is moot.

■     If it becomes clear in the course of a judicial proceeding that resolving the merits of a claim will have no practical effect on the rights of the parties, this court will dismiss the claim as moot. *Yancy v. Shatzer*, 337 Or 345, 349, 97 P3d 1161 (2004). Our task, then, is to determine whether resolution of the jurisdictional question that DLCD brought to us can have any practical effect on the rights of the parties.

---

[5] Subsection 8(1) directs DLCD to send a notice, within 120 days of Measure 49's effective date, to virtually all Measure 37 claimants whose claims (like the present one) pertain to land outside an urban growth boundary. It specifically mentions three classes of claimants who must receive the notice: any "claimant whose claim was denied by the state before the effective date of this 2007 act"; any "claimant whose claim was approved by the state before the effective date of this 2007 act"; and any "claimant whose claim has not been approved or denied by the state before the effective date of this 2007 act."

Subsection 8(2) requires the notice to explain to Measure 37 claimants the options that are available to them, *i.e.*, proceeding under either section 6 or 7 by filing a certain form within 90 days.

Subsection 8(3) sets out the consequences of failing to make the required election:

"A claimant must choose whether to proceed under section 6 or 7 of this 2007 Act by filing the form provided by [DLCD] within 90 days after the date the department mails the notice and form required under subsection (1) of this section. * * * If the claimant fails to file the form within 90 days after the date the department mails the notice, the claimant is not entitled to relief under section 6 or 7 of this 2007 Act."

[6] DLCD acknowledges one exception—that subsection 5(3) of Measure 49 permits a Measure 37 claimant who has been granted a waiver to complete and continue the particular use permitted by the waiver, to the extent that the claimant has "a common law vested right on the effective date of this 2007 Act." As discussed below, DLCD argues that subsection 5(3) is inapplicable to plaintiffs' claim.

We already have summarized DLCD's position—that Measure 49 has rendered the waiver order at the center of the jurisdictional dispute wholly ineffective and, thus, any further judicial consideration of the order, including the question of the proper forum for review, is inherently meaningless. As we shall explain, we generally agree with DLCD's analysis.

An examination of the text and context of Measure 49 conveys a clear intent to extinguish and replace the benefits and procedures that Measure 37 granted to landowners. As noted, section 5 of Measure 49, set out above, provides that claimants who filed "claim[s]" under ORS 197.352 before Measure 49 became effective (*i.e.*, Measure 37 claimants), are entitled to "just compensation" as provided in designated provisions of Measure 49. Subsection 2(2) of Measure 49 defines "claim" to include any "written demand for compensation filed under * * * ORS 197.352," including those filed under the version of the statute that was "in effect immediately before the effective date of [Measure 49]." That definition establishes that Measure 49 pertains to *all* Measure 37 claims, successful or not, and regardless of where they are in the Measure 37 process. Subsection 2(13) then defines "just compensation" purely in terms of Measure 49 remedies, *i.e.*, "[r]elief under sections 5 to 11 of this 2007 Act for land use regulations enacted on or before January 1, 2007," and "[r]elief under sections 12 to 14 of this 2007 Act for land use regulations enacted after January 1, 2007." At the same time, section 4 of Measure 49 extensively amends ORS 197.352 (2005) (Measure 37) in a way that wholly supercedes the provisions of Measure 37 pertaining to monetary compensation for and waivers from the burdens of certain land use regulations under that earlier measure.

A statement of legislative policy at section 3 of Measure 49 confirms that the legislature intended to create new forms of relief in place of the ones available under Measure 37: "The purpose of sections 4 to 22 of this 2007 Act and the amendments to Ballot Measure 37 (2004) *is to modify Ballot Measure 37 (2004)* to ensure that Oregon law provides *just compensation for unfair burdens while retaining Oregon's protections for farm and forest uses and the state's water resources.*" (Emphases added.)

Plaintiffs argue that, whatever the theoretical merits of DLCD's arguments, subsection 5(3) of Measure 49 applies to their claim (subsection 5(3) provides that Measure 37 claimants are entitled to "just compensation" *as provided in a waiver issued before Measure 49 became effective*). Plaintiffs acknowledge that subsection 5(3) of Measure 49 speaks of a "common law vested right" in the waiver. But that is no obstacle, in their view, because, once DLCD concluded that post-acquisition land use regulations had reduced the fair market value of their property and granted relief in the form of a waiver, they had a constitutionally protected "property right" in that waiver that cannot be taken away without just compensation—*i.e.*, a vested right. In a related vein, plaintiffs argue that the waiver that DLCD granted under Measure 37 is the equivalent of rights obtained under a judgment granting a monetary award, and is vested in the sense that it cannot be diminished by legislative action.

However, in so arguing, plaintiffs fail to confront the *entire* wording of subsection 5(3). The "vested right" that that subsection requires is a "common law vested right * * * to complete and continue the use described in the waiver." It is clear from text and context alone that that phrase is referring to broadly applicable legal precedents describing a property owner's rights when land use laws are enacted that make a partially finished project unlawful. *See, e.g., Clackamas Co. v. Holmes*, 265 Or 193, 197, 508 P2d 190 (1973) (describing "vested rights" in those terms). But plaintiffs have made no claims that they have partially completed any "use described in the waiver" that they received.

To the extent that plaintiffs wish to assert that the scope of subsection 5(3) is any broader, then Measure 49 provides plaintiffs with an opportunity to assert that claim, and a forum in which they may assert it. The same is true of any other objections that plaintiffs have to the effects of Measure 49. In short, this is a *Measure 37* case, and we confine our substantive discussion to that legislation.

■ In the end, we hold only that plaintiffs' contention that Measure 49 does not affect the rights of persons who already have obtained Measure 37 waivers is incorrect. In fact, Measure 49 by its terms deprives Measure 37 waivers—

and *all* orders disposing of Measure 37 claims—of any continuing viability, with a single exception that does not apply to plaintiffs' claim. Thus, after December 6, 2007 (the effective date of Measure 49), the final order at issue in the present case had no legal effect. It follows that resolution of the issue that the Court of Appeals decided in *Corey* and as to which we allowed review—whether the Court of Appeals or the circuit court has jurisdiction to review DLCD's final order respecting plaintiffs' Measure 37 claim—can have no practical effect upon the parties: If the order at issue has no continuing legal effect, then neither party can gain anything from review *in either forum*. The case is moot.

■         Plaintiffs suggest that, in any event, the case is justiciable under ORS 14.175, which provides:

> "In any action in which a party alleges that an act, policy or practice of a public body, as defined in ORS 174.109, or of any officer, employee or agent of a public body, as defined in ORS 174.109, is unconstitutional or is otherwise contrary to law, the party may continue to prosecute the action and the court may issue a judgment on the validity of the challenged act, policy or practice *even though the specific act, policy or practice giving rise to the action no longer has a practical effect on the party*, if the court determines that:
>
> "(1)   The party had standing to commence the action;
>
> "(2)   The act challenged by the party is capable of repetition, or the policy or practice challenged by the party continues in effect; and
>
> "(3)   The challenged policy or practice, or similar acts, are likely to evade judicial review in the future."

(Emphasis added.) Plaintiffs suggest that that provision applies because the "Legislative Assembly's practice of changing constitutionally protected rights will necessarily evade review if a claimant * * * cannot try to protect those rights." However, ORS 14.175 does not present a basis for review in this case, because, as we already have observed, plaintiffs can pursue their claim pursuant to the procedure set out in Measure 49, including any assertion that Measure 49 acts on them in an unconstitutional way.

■     That leaves the question of vacatur. DLCD asks this court to vacate the Court of Appeals decision if we find that the case is moot. DLCD argues that vacatur is warranted, because the Court of Appeals decision in *Corey* is wrong and, when similar procedural and jurisdictional disputes arise in the future, the state "will be placed in the position of either violating the law as announced by [the Court of Appeals in *Corey*] or granting contested cases that are, in its view, legally unnecessary."

    In *Kerr v. Bradbury*, 340 Or 241, 250, 131 P3d 737 (2006), we described vacatur as an " 'extraordinary remedy' to which a party must show an 'equitable entitlement' " (citing *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 US 18, 26, 115 S Ct 386, 130 L Ed 2d 233 (1994)). We identified a number of considerations that may inform the court's decision as to whether any party has demonstrated such an equitable entitlement. We noted, first, that courts must consider the public interest, and remain mindful of the fact that judicial precedents are " 'presumptively correct and valuable to the legal community.' " *Id.* (quoting *U.S. Bancorp*, 513 US at 26). We also observed that it was important to consider when and how the case in question became moot. The case for vacatur may be stronger if the lower court decision at issue was rendered when the case already had become moot and, by contrast, the case for vacatur may be weaker if mootness resulted from voluntary action by the party seeking vacatur. *See Kerr*, 340 Or at 249 (quoting *U.S. Bancorp*, 513 US at 24-25, to that effect).

    DLCD does not argue, and we do not find, that any of those considerations plays a significant role in the equitable decision before us. DLCD *does* rely, however, on another consideration that we identified in *Kerr*—whether, in the absence of vacatur, the decision at issue will interfere with public officials' execution of their official duties. *Kerr*, 340 Or at 251. DLCD contends that, if *Corey* stands, DLCD (and all state agencies) unnecessarily and erroneously will be required to treat an initial decision that a person qualifies for a benefit as a property interest, and to grant such persons contested case hearings to determine the extent of the benefit.

In *Kerr*, we considered, and rejected, a similar argument by the Secretary of State, *viz.*, that we should vacate a Court of Appeals decision interpreting the "full-text" provision of Article IV, section 1(2)(d), of the Oregon Constitution, because that decision would continue to have a practical effect on the Secretary of State. We stated:

> "[T]he unreviewed decision of the Court of Appeals does not preclude the Secretary of State from prospectively executing his official duties in accordance with the views he espoused here regarding the 'full text' provision of Article IV, section 1(2)(d). In the future, the Secretary of State may do so and may elect either to defend that view in response to litigation that other parties might file, as he did here, or he may initiate a proceeding, such as a request for a declaratory judgment under ORS 28.020, seeking clarification of his duties under the constitution. A denial of vacatur in this instance will neither inhibit the Secretary of State from administering his office as he sees fit nor require him to acquiescence in a constitutional interpretation with which he does not agree."

*Kerr*, 340 Or at 251. We think, moreover, that the question before us today is, if anything, easier than that presented in *Kerr*. The decision of the Court of Appeals in *Corey* was a decision *under Measure 37*. The fact that such a decision remains on the books does not require DLCD to treat it as binding precedent in future proceedings, because any such future proceedings will be *under Measure 49*. Therefore, no inequity will result from denying DLCD's request for vacatur.

The petition for review is dismissed as moot. The motion to vacate and remand is denied.