246 P.3d 1140 (2010)
239 Or. App. 553
James A. SMEJKAL, Plaintiff-Appellant,
v.
STATE of Oregon, by and through the DEPARTMENT OF ADMINISTRATIVE SERVICES, and by and through the DEPARTMENT OF LAND CONSERVATION AND DEVELOPMENT; and Washington County, Defendants-Respondents.
C082694CV, C082695CV, C082696CV, C082697CV, C082698CV, C082699CV, C082700CV, C082701CV, C082702CV; A141836.
Court of Appeals of Oregon.
Argued and Submitted July 15, 2010.
Decided December 15, 2010.
*1141 William C. Cox, Portland, argued the cause for appellant. With him on the briefs was Gary P. Shepherd.
Stephanie L. Striffler, Senior Assistant Attorney General, argued the cause for respondent State of Oregon. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.
Christopher G. Gilmore, Senior Assistant County Counsel, argued the cause for respondent Washington County. With him on the brief was Office of Washington County Counsel.
Before LANDAU, Presiding Judge, and ORTEGA, Judge, and SERCOMBE, Judge.
SERCOMBE, J.
Plaintiff appeals a judgment dismissing his claims against defendants, State of Oregon and Washington County, in nine consolidated cases. The second amended complaint in each case alleged that both defendants breached contracts with plaintiff to waive the application of specific state or local land use regulations that would otherwise restrict the use of plaintiff's property. The complaints further asserted that a state statute impaired the obligations of the waiver agreements, contrary to impairment of contract provisions in the federal and state constitutions.[1] The complaints also sought declaratory relief that the state and local waiver decisions were akin to judicial judgments and were thus protected from the effects of subsequent legislation by the separation of powers provision of the Oregon Constitution.[2] After cross-motions *1142 for summary judgment, the trial court determined that plaintiff's claims lacked merit and entered judgment in favor of defendants. On review, plaintiff reiterates his impairment of contract and separation of powers claims. We conclude that plaintiff is not entitled to relief on his claims.[3]
The alleged waiver agreements occurred through the operation of Measure 37. Measure 37 was adopted through the initiative process in the 2004 general election, Or. Laws 2005, ch 1, and was initially codified at ORS 197.352 (2005). The law was subsequently amended, Or. Laws 2007, ch. 424, § 4, and, in 2007, it was renumbered as ORS 195.305. The law required state and local governments to provide "just compensation" to a property owner when a governmental entity enacted or enforced a post-acquisition land use regulation that restricted the use of the property in ways that reduced its fair market value. Former ORS 197.352(1); see generally MacPherson v. DAS, 340 Or. 117, 130 P.3d 308 (2006) (explaining operation of Measure 37). Under the measure, that regulatory effect allowed an affected property owner to demand just compensation from the government. If a claimant qualified for relief, the governmental entity could respond in one of two ways: either by paying the claimant the amount of the reduction of the property's value, former ORS 197.352(2), or by deciding to "modify, remove, or not to apply the land use regulation * * * to allow the owner to use the property for a use permitted at the time the owner acquired the property," former ORS 197.352(8). In the subsequent adjudication of Measure 37 claims, the option to exempt property from otherwise applicable regulations and allow a specified use became known as a "Measure 37 waiver."
Plaintiff sought and obtained Measure 37 waivers from defendants from the application of post-acquisition regulations for various properties. Plaintiff was not alone in obtaining that relief. Following the adoption of Measure 37, compensation claims were filed at the state and local government levels, seeking to avoid the restrictions on land use by the combined effect of state regulations and local zoning laws, such as restrictions on development on rural land zoned for agricultural and forestry uses. The potential disruptive effect of that development, together with a lack of clarity in Measure 37's provisions, led to calls for a revision of the measure. See Official Voters' Pamphlet, Special Election, Nov. 6, 2007, 20 (Legislative Argument in Support of Measure 49).
The 2007 Legislative Assembly referred to the voters a substitute statute, Measure 49, that narrowed the effect of Measure 37, including a reduction in the degree of residential development allowed under a requested Measure 37 waiver. Or. Laws 2007, ch. 424; see generally Corey v. DLCD, 344 Or. 457, 184 P.3d 1109 (2008) (describing the purpose and effect of Measure 49). The measure was adopted by the voters in a special election held on November 6, 2007, and became effective on December 6, 2007. Or. Const., Art. IV, § 1(4)(d) (time of effect of initiated or referred measures).
Measure 49 changes the adjudicatory processes, approval standards, and extent of relief for two classes of Measure 37 claims: those filed on or before June 28, 2007 (the concluding day of the 2007 legislative session) and those filed thereafter. As to the former class of claims, section 5 of the measure provides:
"A claimant that filed a claim under ORS 197.352 on or before the date of *1143 adjournment sine die of the 2007 regular session of the Seventy-fourth Legislative Assembly [June 28, 2007] is entitled to just compensation as provided in:
"(1) Sections 6 or 7 of this 2007 Act, at the claimant's election, if the property described in the claim is located entirely outside any urban growth boundary and entirely outside the boundaries of any city;[[4]]
"(2) Section 9 of this 2007 Act if the property described in the claim is located, in whole or in part, within an urban growth boundary;[[5]] or
"(3) A waiver issued before the effective date of this 2007 Act [December 6, 2007] to the extent that the claimant's use of the property complies with the waiver and the claimant has a common law vested right on the effective date of this 2007 Act to complete and continue the use described in the waiver."
Thus, Corey explains:
"An examination of the text and context of Measure 49 conveys a clear intent to extinguish and replace the benefits and procedures that Measure 37 granted to landowners. * * * [S]ection 5 of Measure 49 * * * provides that claimants who filed `claim[s]' under ORS 197.352 before Measure 49 became effective (i.e., Measure 37 claimants), are entitled to `just compensation' as provided in designated provisions of Measure 49. Subsection 2(2) of Measure 49 defines `claim' to include any `written demand for compensation filed under * * * ORS 197.352,' including those filed under the version of the statute that was `in effect immediately before the effective date of [Measure 49].' That definition establishes that Measure 49 pertains to all Measure 37 claims, successful or not, and regardless of where they are in the Measure 37 process."
344 Or. at 465, 184 P.3d 1109 (third omission and emphasis in original).
Following the adoption of Measure 49, defendants no longer recognized the validity of plaintiff's Measure 37 waivers, confining plaintiff to the procedures and development allowances set out in Measure 49. Plaintiff first contends that the issued Measure 37 waivers are contracts between plaintiff and the state or county, and that the state and county breached or unconstitutionally impaired the obligations of those waiver contracts by implementing Measure 49. Defendants respond that the waivers are not contracts, so as to allow a breach of contract remedy for their abandonment by defendants or to justify the application of constitutional limitations on impairment of the obligation of contracts to Measure 49's effect on those waivers. We agree with defendants and conclude that no contract was formed by the issuance of any Measure 37 waiver. That conclusion undercuts plaintiff's claims that the purported contract was impaired or breached by Measure 49.
In Hughes v. State of Oregon, 314 Or. 1, 14, 838 P.2d 1018 (1992), the court set out a two-part inquiry to determine if a claim of contractual impairment or breach arose under Article I, section 21:
"First, it must be determined whether a contract exists to which the person asserting an impairment is a party; and, second, it must be determined whether a law of this state has impaired an obligation of that contract. General principles of contract law normally will govern both inquiries, even where the state is alleged to be a party to the contract at issue."
(Citation omitted.)
We begin with general principles of contract law. The formation of a contract requires "a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." Restatement (Second) of Contracts § 17(1) (1981). "The manifestation of mutual assent to an exchange ordinarily takes the form of an offer or proposal by one *1144 party followed by an acceptance by the other party or parties." Id. § 22(1). As we understand plaintiff's contention, it is that (1) Measure 37 created an offer by state and local governments to pay landowners the reduction in value caused by post-acquisition land use regulations; (2) a landowner accepted that offer by applying for compensation according to the terms of the measure; (3) that debt was avoided and consideration was paid to the landowner by issuing a waiver of those regulations; (4) at that point, a contract was formed to waive the past regulations and allow unregulated development of the property; and (5) the limitations on development imposed by Measure 49 breached or impaired the promise not to regulate use of the property beyond the controls present at the time of the property's purchase. Plaintiff's claim, then, depends on whether the state and county formed agreements with him not to regulate his properties in the future except under regulations in place at the time of purchase.
That type of an agreement would be extraordinary. Statutes and ordinances typically bind state and local governments to act in a particular way toward a person, e.g., to issue a permit or license if a complete and valid application is filed or to pay benefits to qualified supplicants. But, ordinarily, a statutory duty of a government is not contractual in character. Thus, in K.R.A.M. Corp. v. City of Vernonia, 95 Or.App. 534, 770 P.2d 77, rev. den., 308 Or. 142, 775 P.2d 1382 (1989), we held that a city's issuance of sewer connection permits did not give a developer contract rights to avoid the application of a later ordinance revoking the permits. Quoting Twin Rocks Watseco v. Sheets, 15 Or. App. 445, 448, 516 P.2d 472 (1973), rev. den. (1974), we explained that, "[i]n general, a permit or license does not create irrevocable rights, but, instead, is subject to modification or revocation by subsequent changes in law." K.R.A.M. Corp., 95 Or.App. at 537, 770 P.2d 77 (citations omitted).
Statutory obligations of governments can become contractual in nature when the statute clearly announces that the obligation is immune from statutory change. The court observed in Campbell et al. v. Aldrich et al., 159 Or. 208, 213-14, 79 P.2d 257, appeal dismissed, 305 U.S. 559, 59 S.Ct. 87, 83 L.Ed. 352 (1938):
"[L]egislative enactments may contain provisions which, when accepted as the basis of action by individuals, become contracts between them and the state. It is also equally well established that the intention of the legislature thus to create contractual obligations, resulting in extinguishment to a certain extent of governmental powers, must clearly and unmistakably appear. The intention to surrender or suspend legislative control over matters vitally affecting the public welfare cannot be established by mere implication."
Whether a statute sets out a contractual commitment of a government depends, then, on whether the statute sets out an unambiguously expressed intent to suspend future legislative control over that commitment. Put another way, "[w]here the legislation `contain[s] nothing indicative of a legislative commitment not to repeal or amend the statute in the future,' a statutory contract probably cannot be found." FOPPO v. State of Oregon, 144 Or.App. 535, 539-40, 928 P.2d 335 (1996) (quoting Eckles v. State of Oregon, 306 Or. 380, 391, 760 P.2d 846 (1988), appeal dismissed, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989)). In Hughes, for example, that commitment was found in a statute exempting state pensions from state and local taxes "heretofore or hereafter imposed." 314 Or. at 7, 838 P.2d 1018. That obligation limited the state's authority to adopt new laws that taxed the pensions.
Measure 37 lacks any similar commitment by the state not to repeal or amend waivers in the future. The statute does not cede authority to adopt land use regulations in any way. Measure 37 allows an option to waive the application of past land use regulations in order to permit a specified land use. It says nothing about the state's authority to impose future regulations on land development, whether in the form of Measure 49 or otherwise. Indeed, the Supreme Court characterized Measure 37 in this fashion in MacPherson. The plaintiffs in MacPherson challenged Measure 37 on a number of grounds, including a claim that the statute unconstitutionally *1145 divested government of the ability to legislate in the public interest. In rejecting that challenge, the court concluded:
"Contrary to the assumption underlying their argument, Oregon's legislative bodies have not divested themselves of the right to enact new land use regulations in the future. Nothing in Measure 37 forbids the Legislative Assembly or the people from enacting new land use statutes, from repealing all land use statutes, or from amending or repealing Measure 37 itself. Simply stated, Measure 37 is an exercise of the plenary power, not a limitation on it."
MacPherson, 340 Or. at 128, 130 P.3d 308 (emphases in original; omitted). The court explicitly found that "Measure 37 does not contract away the plenary power to enact legislation." Id. at 128 n. 8, 130 P.3d 308.
Thus, Measure 37 did not inhibit the Legislative Assembly or the people from enacting regulations on the use of plaintiff's properties. Plaintiff's claimsthat the statute underscores a contractual commitment to not regulate the properties in the manner that Measure 49 doesare based on that premise and, accordingly, fail. The trial court did not err in concluding that plaintiff's complaints stated no claim under Article I, section 21.[6]
Plaintiff next contends that the Measure 37 waivers issued by the Washington County Board of County Commissioners and the Department of Land Conservation and Development (DLCD) director have the same legal effect as a judgment by a court because the process used to issue the waivers was quasi-judicial in character, and the board and director were exercising judicial authority in granting the waivers. Plaintiff argues that the repeal of the waivers by Measure 49 violated Article III, section 1, of the Oregon Constitution, the separation of powers provision, because the legislation nullified matters adjudicated by judicial officers of the state. Defendants respond that Article III, section 1, does not apply to local government officials and argue that, even if it does, the county board members and the DLCD director are executive or administrative officials whose actions are subject to statutory controls.
We agree with defendants that the legislature has constitutional authority, without violating Article III, section 1, to alter the relief provided by counties and administrative agencies under Measure 37. The Supreme Court has cautioned "that a violation of separation of powers may be found only if the problem is clear" and has described the following inquiries to determine whether there is a separation of powers violation:
"The first inquiry is whether one department of government has `unduly burdened' the actions of another department in an area of responsibility or authority committed to that other department. * * * The second inquiry is whether one department is performing the functions committed to another department."
Rooney v. Kulongoski (Elections Division # 13), 322 Or. 15, 28, 902 P.2d 1143 (1995) (citations omitted).
We understand plaintiff to contend that the first inquiry is relevant here. Plaintiff argues that, through Measure 49, the legislature has burdened the actions of the judicial department by extinguishing waivers issued by a judicial officer. Plaintiff relies on cases arising under Article III, section 1, that overturn legislation that sets aside a circuit court judgment, e.g., Roles Shingle Co. v. Bergerson, 142 Or. 131, 19 P.2d 94 (1933) (unconstitutionality of legislation reopening a workers' compensation case after its dismissal by the Oregon Supreme Court). Plaintiff asserts that the issuance of Measure 37 waivers by the county board and the DLCD director were actions of the judicial department because an adjudicatory process was used to approve the waivers.
It is plain, however, that a board of county commissioners or a state agency director does not exercise judicial power, no matter what process is used in that exercise. Article VII (Amended), section 1, of the Oregon *1146 Constitution provides that the "judicial power of the state shall be vested in one supreme court and in such other courts as may from time to time be created by law." The section further requires that judges of any court be elected for terms of six years. Article III, section 1, separates the powers of elected judges of courts that are created by law from the powers of government officers in the legislative or executive departments.
The Washington County commissioners and the DLCD director, the entities who issued the waivers at issue, are not judges, and they do not sit in courts that are created by law. Measure 49 does not burden the actions of the judicial department. Plaintiff does not identify any authority committed to the executive department or constitutionally reserved to local governments. Cf. LaGrande/Astoria v. PERB, 281 Or. 137, 576 P.2d 1204, aff'd on reh'g, 284 Or. 173, 586 P.2d 765 (1978) (stating rules for autonomy of home-rule cities). The trial court did not err in concluding that the repeal of plaintiff's Measure 37 waivers by Measure 49 did not violate Article III, section 1.
Vacated and remanded with instructions to enter judgment declaring parties' rights as to second claim for relief in a manner consistent with this opinion; otherwise affirmed.
NOTES
[1] Article I, section 10, of the United States Constitution provides, in part, that "[n]o state shall * * * pass any * * * [l]aw impairing the [o]bligation of [c]ontracts * * *." Analogously, part of the Oregon Constitution, Article I, section 21, provides that "[n]o * * * law impairing the obligation of contracts shall ever be passed * * *."
[2] Article III, section 1, of the Oregon Constitution, provides:

"The powers of the Government shall be divided into three seperate [sic] departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."
[3] We note that the trial court's judgment dismissed both the contract claim and the claim for declaratory relief. The dismissal of a declaratory relief claim does not decide the claim. "When the dismissal of a declaratory judgment action was clearly based on a determination of the merits of the claim, however, our practice has been to review that determination as a matter of law and then remand for the issuance of a judgment that declares the rights of the parties in accordance with our review of the merits." Doe v. Medford School Dist. 549C, 232 Or.App. 38, 45-46, 221 P.3d 787 (2009). We follow that practice in this case.
[4] Section 6 requires approval of up to three lots, parcels, or dwellings under certain circumstances. Section 7 permits discretionary approval of up to 10 homesites under a more narrow set of circumstances.
[5] Section 9 provides that owners of property within the urban growth boundary of a city may qualify to develop one to 10 single-family dwellings under specified circumstances.
[6] The same result obtains under Article I, section 10, of the United States Constitution. As with the Oregon Constitution, the clause is not implicated if no contract has been formed. Federal law requires a "clear indication" of legislative intent to create the specific term alleged to be impaired by subsequent legislation. Robertson v. Kulongoski, 466 F.3d 1114, 1117-18 (9th Cir. 2006).