Argued and submitted November 26, 2008, supplemental judgment reversed and remanded for reconsideration of attorney fee award; otherwise affirmed June 10, respondent's petition for reconsideration filed June 24 allowed by opinion August 5, 2009

See 230 Or App 125, 213 P3d 1265 (2009)

Dorothy ENGLISH,
Deceased,
by and through Douglas James Sellers,
Personal Representative of the
Estate of Dorothy English,
*Plaintiff-Respondent,*

*v.*

MULTNOMAH COUNTY,
*Defendant-Appellant.*

Multnomah County Circuit Court
060505243; A135637

209 P3d 831

Stephen L. Madkour, Assistant County Attorney, argued the cause for appellant. With him on the briefs was Agnes Sowle, County Attorney.

D. Joe Willis argued the cause for respondent. With him on the briefs were Michael T. Garone, Andrew Lee, and Schwabe, Williamson & Wyatt, P.C.

Before Haselton, Presiding Judge, and Edmonds, Judge, and Rosenblum, Judge.

HASELTON, P. J.

**HASELTON, P. J.**

Defendant Multnomah County appeals a supplemental judgment, which awarded attorney fees, expenses, and costs to plaintiff Dorothy English after she obtained a general judgment for $1,150,000 in just compensation pursuant to ORS 197.352 (2005) (commonly known as Measure 37).[1] The central issue on appeal is whether ORS 197.352(6), the statute that governed attorney fees in Measure 37 cases, authorized the award of attorney fees in this case and, if it did, whether the trial court properly awarded a "customary" contingent fee. Because English's entitlement to fees, expenses, and costs depends on the correct interpretation of ORS 197.352, we review for errors of law, *see Cramblit v. Diamond B Constructors*, 197 Or App 358, 370, 105 P3d 906 (2005), and reverse.

The material facts are essentially procedural and are not in dispute. However, because this appeal is only one of many involving the county and English, an understanding of the litigation concerning English's Measure 37 claim provides the necessary context for resolving the issues presented in this appeal. *See State ex rel English v. Multnomah County*, 227 Or App 419, 206 P3d 224 (2009) (*English I*). Accordingly, we describe in some detail the litigation between the parties and our resolution of their other related appeals.

In November 2004, in anticipation of the December 2004 effective date of Measure 37, English engaged the firm of Schwabe, Williamson & Wyatt, P.C. (Schwabe) to make a

---

[1] As context for our discussion, Ballot Measure 37 (2004), which was enacted through the initiative process and codified as *former* ORS 197.352 (2005), *amended by* Oregon Laws 2007, chapter 424, section 4, *renumbered as* ORS 195.305 (2007), provided, in a nutshell, that public entities that enacted or enforced land use regulations that affected the fair market value of a claimant's property either had to pay just compensation or waive the offending regulations. In 2007, the voters passed Ballot Measure 49, Oregon Laws 2007, chapter 424, which "extinguish[ed] and replace[d] the benefits and procedures that Measure 37 granted to landowners." *Corey v. DLCD*, 344 Or 457, 465, 184 P3d 1109 (2008). Throughout this opinion, all references to ORS 197.352 are to the 2005 version of that statute.

Further, Dorothy English died after the county initiated this appeal, and the Appellate Commissioner granted a motion to substitute the personal representative of English's estate as the real party in interest. ORCP 34 B(1); ORAP 8.05. For ease of reference, throughout this opinion, we refer to plaintiff as "English" and defendant as "the county."

Measure 37 claim on her behalf. In November 2004, Schwabe sent English a letter of engagement that described Schwabe's proposed fee agreement. English agreed to the terms of the fee agreement in which the scope of the representation was limited to "making a claim under Measure 37."[2] Four aspects of that fee agreement are most pertinent to this appeal.

*First*, the agreement provided that Schwabe would complete "the work required to prepare and file [English's] written demand on a *contingent fee basis*." (Emphasis added.) Of significance, although the agreement indicated that work would be done on a "contingent fee basis," it did not include a provision indicating that Schwabe's fee would be based on any particular percentage of any eventual recovery.

*Second*, the agreement provided that Schwabe would "keep track of the time expended by the various lawyers and paralegal staff involved and record the time at our regular hourly rates" and would apply a nine percent standard interest charge for deferred payment.

*Third*, the agreement stated that Schwabe's total fee would be based on the hourly rates and interest charges described above or "an amount the [c]ourt should award, whichever is highe[r]" because "courts often award fees on contingent matters at a higher rate than if they were on a regular hourly arrangement" and that, if Schwabe never obtained "a court-awarded fee that can be collected from the government, [English] would pay only the regular hourly amounts including the regular deferred payment charge for the work done at this initial phase."

*Fourth*, the agreement stated that English would pay Schwabe's bill only if it "succeed[ed] in obtaining relief for [English] under Measure 37 * * *." According to Schwabe,

"[f]or purposes of this engagement, we would consider that we will have successfully obtained relief for you if either (a) you are compensated for the diminution in the value of your property by reason of the land-use restrictions, (b) the

---

[2] The parties later expanded the scope of the November 2004 fee agreement concerning English's Measure 37 claim "to include the extended engagement of preparing, filing and prosecuting to conclusion at the trial court level * * *."

government waives enforcement of the land-use restrictions to enable you to create and sell off a discrete parcel of the land where you currently reside. If the relief is in the form of monetary compensation, we would take our contingent fee from those proceeds. If we get you relief in the form of a government release of the land-use restrictions, we would collect our fee from the proceeds of a sale that realizes that benefit. We understand that you do desire to divide the property into 6 discrete parcels and sell 5 of them. We would be paid from the proceeds of the first sale."

In December 2004, English filed a written demand with the county for $1,150,000 in just compensation pursuant to Measure 37. Thereafter, in May 2006, dissatisfied with the county's resulting waiver, English filed her complaint for just compensation in the trial court.

After the parties filed cross-motions for summary judgment, the trial court granted English's motion for summary judgment as to all liability issues and denied the county's cross-motion. The parties then stipulated to the amount of just compensation, and, in late December 2006, the trial court entered a judgment providing, in part:

"1. That [English] ha[s] judgment against [the county] for just compensation pursuant to the provisions of ORS 197.352 in the sum of $1,150,000.

"2. That English ha[s] judgment for her reasonable attorney fees, expenses, costs and other disbursements reasonably incurred pursuant to [ORS] 197.352, ORCP 68 and Supplemental Judgment."

In January 2007, the county appealed the compensation judgment to this court.[3] In February, the county filed a motion to dismiss its appeal, and we subsequently granted the county's motion and, consequently, issued an appellate judgment terminating that appeal.

Meanwhile, also in January 2007, English filed her statement for attorney fees and cost bill in the trial court, asserting that she was "entitled to reasonable attorney fees,

---

[3] For ease of reference, throughout this opinion, we refer to the original proceeding as the "compensation proceeding" and the judgment obtained in that proceeding as the "compensation judgment."

expenses, costs and disbursements incurred under ORS 197.352."[4] Specifically, English requested $414,151.22, which was itemized as follows: (1) $383,000 in attorney fees for services rendered in the matter, which "exceed[ed] the total sum of the charged rates multiplied by the hours worked due to the contingent nature of the fee arrangement"; (2) $27,260.49 in expert witness fee expenses; and (3) $3,890.73 in costs.[5] English asserted that the fee was reasonable in light of numerous factors, including the nature of the fee—that is, whether the fee is fixed or contingent.

The county objected, asserting that ORS 197.352(6) authorized fees "reasonably incurred to *collect* compensation." (Emphasis added.) In the county's characterization, the fees and expenses that English sought had been incurred in establishing an entitlement to compensation, not in "collecting" compensation, and, thus, she was not entitled to an award of fees and costs. Further, the county asserted that Schwabe had no basis to request a "percentage fee" because "[t]hat's not their arrangement with their client." Alternatively, the county contended that, if the statute authorized an award in this case, the fees and costs that English sought were not reasonable for a variety of reasons, including that they were sought for tasks unrelated to English's Measure 37 claim and the prosecution of the action.

English responded to the county's objections, arguing that the fees and costs were statutorily authorized under ORS 197.352 and were reasonable. Although English noted that the county had correctly identified a "few unintentional erroneous entries that should not have been included in [English's] petition" and requested the removal of those entries from the petition," English's basic position remained constant:

> "Given the *contingent* nature of this fee arrangement, removal of that effort and amount from the fee petition should not reduce the fee award at all. Even if all of the [county's] objections about the amount of time spent or the

---

[4] The text of that statute is set out below. *See* 229 Or App at 28.

[5] Further, in March 2007, English filed a supplemental statement for attorney fees and cost bill that requested an additional $9,798.24 in expert witness fees and costs.

sufficiency of the entries were valid (and they are not), the contingent percentage of one-third of the judgment is well within reason."

(Emphasis added.)

At the conclusion of the hearing concerning attorney fees, the trial court made extensive oral findings on the record. In addition to concluding that English was entitled to recover expert witness fees, the trial court determined that English was entitled to recover attorney fees, because ORS 197.352(6) "provide[d] a right to recover attorney fees under the circumstances of this case, not just in the post-judgment enforcement of judgment process but in the process of getting to judgment through the course of litigation." Ultimately, the court awarded English attorney fees commensurate with one-third of the amount awarded in the compensation judgment—that is, approximately $383,000—which the court described as the "usual and customary fee in cases of a contingent nature."

In explaining its reasoning, the court stated:

"I'm persuaded to follow the rationale that's been offered by [English's] experts regarding coming to a determination of reasonableness of * * * fees based upon what the contingent fee would be if applied to the judgment on * * * a one-third contingency basis which results in $383,000."[6]

---

[6] English's experts asserted that a customary contingent fee of one-third of the amount awarded in the compensation judgment was reasonable in this case, but articulated two alternative rationales in support of that conclusion. One expert, Tongue, testified that this Measure 37 just compensation case was similar to a condemnation case and that it is customary, in condemnation cases, to award one-third of the difference between the amount of any offer and the amount recovered or the hourly rate, whichever is more. Thus, Tongue testified that "a customary contingent fee in a condemnation case is a * * * third in my opinion, so that would be my opinion."

The second expert, Maloney, also testified that "a reasonable attorney fee in this case, given that it was a contingent fee based on the agreement, would be one-third of the total amount recovered in this case." According to Maloney, that amount was based on "the customary contingency fee agreement that we have had in effect in Oregon ever since I've been in practice," which he described as "typically 25 percent of the amount recovered, the gross amount recovered if it is settled before the lawsuit is filed, one-third of the gross amount recovered if it is settled between the time of filing and the time you begin trial, and 40 percent of the recovery after trial begins." Nevertheless, Maloney reasoned that even a customary contingent fee must be reasonable and that a rough examination of the hours expended to prosecute the case provides valuable information in making that determination. Specifically, he testified that,

Referring to the analytical approach endorsed by one of English's experts, Maloney, *see* 229 Or App at 21-22 n 6, the trial court "looked at, in fact, what the amount of time * * * that was spent, the reasonableness of the rates of counsel and the objections that were made by the [c]ounty, some of which I think were * * * well founded[.]" The trial court indicated that, even assuming that it discounted various entries in the petition to which the county objected, a calculation of a reasonable hourly rate would result in a fee of "over $200,000" and that it would then be appropriate to double that amount. The court concluded:

> "If I did that, we'd be talking about $400,000. *So * * * that's another way of my analyzing whether or not the contingent fee amount that was proposed by both of the plaintiff's experts is a * * * reasonable fee for this case*, and I * * * believe that it is for that reason.
>
> "So rather than * * * trying to go through and come up with mathematical exactness on the lodestar formula, and then doubling the rate and coming to a number, * * * I'm satisfied that the contingent fee amount is a reasonable amount, given my analysis of what would normally be the hourly rate times the * * * total hours."

(Emphasis added.)

When the county sought clarification, the trial court reaffirmed its conclusion that it was awarding a customary one-third contingent fee in the case:

> "[THE COUNTY]:    So the exact amount of the attorney fee award is what was petitioned for?
>
> "THE COURT:    Correct.
>
> "* * * * *
>
> "[THE COUNTY]:    Based on a one-third contingency.
>
> "THE COURT:    Correct.

---

"even though this is a contingency case and you don't have to pay particularly close attention to the hours involved, I've looked at it as kind of a check and balance, because, if, for example, you had an extreme case where they spent a total of, say, ten hours and got a stipulation for a million dollars, then a third of the million I think would have been unreasonable."

"[THE COUNTY]: But you're also saying that * * * with no reductions despite the fact that the [c]ourt found there was some that were—

"THE COURT: Correct. Because all that did was— that analysis supports my view that the one-third contingency is a reasonable number."

Ultimately, in April 2007, the trial court issued a supplemental judgment that awarded English (1) "an attorney fee of $383,333.33, or one-third of the General Judgment"—that is, the compensation judgment; (2) "expenses, costs, and other disbursements, including expert witness fees in the underlying case in the amount totaling $37,058.73"; and (3) "costs, expenses and expert witness fees expended for the hearing on attorney fees, in the amount of $17,850." The county appealed that judgment, which is the subject of this appeal.

Thereafter, in June 2007, while this appeal concerning attorney fees was pending, English sought satisfaction of the money award in the compensation judgment pursuant to ORS 30.390. When the county refused to pay, English sought a writ of mandamus. The trial court granted the county's motion to dismiss the alternative writ of mandamus on the ground that, under ORS 197.352, the county had complete discretion as to whether to satisfy the judgment. *English I*, 227 Or App at 425. English appealed the judgment in the mandamus proceeding. *Id.* at 421. In *English I*, we reversed that judgment and remanded the case to the trial court with instructions to issue a peremptory writ of mandamus directing the county to pay the judgment of $1,150,000 in just compensation. *Id.* at 433.

We turn to the parties' arguments in this appeal concerning the supplemental judgment that awarded English attorney fees, expenses, and costs. The county makes four basic arguments. *First*, the county contends that this appeal is moot, because of the passage of Measure 49.[7] *Second*, with regard to the award of attorney fees, the county contends

---

[7] In May 2008, after Measure 49 became effective, the county filed a notice of probable mootness pursuant to ORAP 8.45. In July 2008, the Appellate Commissioner issued an order "defer[ring] a ruling on the effect of Ballot Measure 49 on this case to the department that hears the appeal on its merits."

that, because English has not collected the monetary award adjudicated in the compensation judgment, she is not entitled to attorney fees in this case under ORS 197.352(6), which authorized an award of attorney fees "incurred to *collect* the compensation." (Emphasis added.) *Third*, the county asserts that the trial court either erred in awarding a customary contingent fee or abused its discretion by awarding fees that were unreasonable. *Fourth*, with regard to the award of expert witness fees, the county contends that the undefined reference to "expenses" in ORS 197.352(6) did not entitle plaintiff to recover expert witness fees in this case and, alternatively, that, if those fees were authorized, they were not necessary for the prosecution of English's Measure 37 claim.

English responds, in turn, with four counterarguments. *First*, English asserts that the passage of Measure 49 did not cause this appeal to become moot. *Second*, with regard to the attorney fee award, English asserts that the plain language of ORS 197.352(6), supported by pertinent legislative history, provided that she is entitled to attorney fees for pursuing her Measure 37 claim for just compensation. *Third*, she contends that, regardless of whether the trial court properly awarded a customary contingent fee, it properly based its attorney fee award on the alternative ground that the award was reasonable in light of the hours expended and the rates charged. *Fourth*, English asserts that the plain language of ORS 197.352(6) authorized the award of expert witness fees and that those fees were necessary in the prosecution of her Measure 37 claim.

■　　Because it implicates our jurisdiction, we begin by addressing the county's contention that this appeal is moot. An appeal is moot if "resolving the merits of a claim will have no practical effect on the rights of the parties[.]" *Corey v. DLCD*, 344 Or 457, 464, 184 P3d 1109 (2008). In this appeal, the county raises essentially the same mootness arguments that it raised, and that we rejected, in *English I*. Specifically, we understand the county to assert, by its reference to *Corey*, that, because Measure 49 applies to all Measure 37 claims, the supplemental judgment that awarded English attorney fees and costs under Measure 37 is deprived of continuing viability. Thus, in the county's view, any decision concerning English's entitlement to fees, expenses, and costs and the reasonableness of the award in the supplemental judgment

will have no effect on the parties, and, as a consequence, the appeal is moot.

The county is, of course, correct that this appeal differs from *English I* in that it implicates the continued viability of the supplemental judgment for attorney fees. Nevertheless, with respect to the effect of Measure 49, that is, ultimately, a distinction without a difference.

As previously noted, 229 Or App at 23, in *English I*, we reversed the trial court's dismissal of English's alternative writ of mandamus and remanded with instructions that the trial court issue a peremptory writ of mandamus directing the county to pay the judgment of $1,150,000 in just compensation. As here, the county in *English I* contended that the appeal concerning the judgment entered in the mandamus proceeding was moot because of the passage of Measure 49. 227 Or App at 426. In rejecting that contention, we began by summarizing the cases addressing the impact of the intervening enactment of Measure 49 on the justiciability of pending appeals:

> "In *Corey*, the Supreme Court examined the text and context of Measure 49 and determined that 'Measure 49 pertains to *all* Measure 37 claims, successful or not, and regardless of where they are in the Measure 37 process.' 344 Or at 465 (emphasis in original). The court ultimately held that 'Measure 49 by its terms deprives Measure 37 waivers—and *all* orders disposing of Measure 37 claims—of any continuing viability.' *Id.* at 466-67 (emphasis in original). Thus, because DLCD's order in that case had no continuing viability, a decision by the Supreme Court as to whether this court or a circuit court had jurisdiction to review the order could have had no practical effect on the parties and the case was moot.

> "We recently applied *Corey* in *Cyrus v. Board of County Commissioners*, 226 Or App 1, 202 P3d 274 (2009). In *Cyrus*, the petitioners appealed a circuit court judgment essentially affirming an order of the Deschutes County Board of Commissioners that waived particular land use regulations. While the appeal was pending, Measure 49 became effective, and, like the Supreme Court in *Corey*, we were faced with determining whether the appeal was moot. The petitioners in *Cyrus* argued that our determination of the validity of the Measure 37 waiver would have a practical effect on the parties because it was a predicate to the

argument that the waiver had vested under Measure 49. 226 Or App at 8. However, we concluded that the appeal was moot because, as the Supreme Court held in *Corey*, Measure 49 deprived all orders disposing of Measure 37 claims of continued viability, and the validity of the waiver could be litigated in a Measure 49 proceeding. *Cyrus*, 226 Or App at 13."

*English I*, 227 Or App at 426-27. Based on those cases, we reasoned in *English I* that, when the county dismissed its appeal from the compensation judgment over nine months before the effective date of Measure 49 and we issued an appellate judgment, the county had exhausted its opportunities for appellate review. Accordingly, in that context, there was a final judgment conclusively adjudicating the Measure 37 claim for compensation, and, although English's "Measure 37 claim for just compensation was extinguished," she "was left, by way of the consequent 'merger' and 'substitution' with a final judgment and the right to enforce it." *English I*, 227 Or App at 428 (citation omitted). Ultimately, we held:

> "This appeal arose from English's enforcement activities—that is, English's attempts to compel the county to satisfy the compensation judgment by seeking a writ of mandamus. This is not an appeal concerning an existing Measure 37 claim. For that reason, our determination whether the county must pay the compensation judgment will have a practical effect on the rights of the parties. Consequently, the appeal is not moot."

*Id.*

The foundation of our holding in *English I* was a basic principle derived from *Corey* and *Cyrus*: When the dispute involving a predicate Measure 37 claim for just compensation is ongoing (whether in another forum or on appeal), Measure 49 supersedes the Measure 37 claim and requires the parties to proceed under the new standards in Measure 49 to determine their rights. Applying that principle to the circumstances of this appeal, we reach the same conclusion that we did in *English I*—that is, that the appeal is not moot.

As we have already indicated, in February 2007, when the county dismissed its appeal from the compensation

judgment over nine months before the effective date of Measure 49 and we issued an appellate judgment, the county had exhausted its opportunities for appellate review. Consequently, there was a final judgment conclusively adjudicating the Measure 37 claim for just compensation and that claim was extinguished. By that point, there was no ongoing dispute concerning English's Measure 37 claim for just compensation—the claim that was the predicate for English's fee entitlement. Thus, because this appeal does not involve an ongoing dispute concerning English's Measure 37 claim for just compensation, which Measure 49 would otherwise obviate, our resolution of English's entitlement to fees and costs pursuant to ORS 197.352(6) will have a practical effect on the parties. Accordingly, this appeal is not moot.

Having determined that the appeal is justiciable, we turn to the propriety of the attorney fee award in this case. Specifically, we address (1) whether English was entitled to recover any fees, expenses, and costs—that is, whether at least some of the amount sought was "reasonably incurred to collect the compensation" under ORS 197.352(6); and (2) if so, whether the trial court erred in awarding fees in the amount of one-third of the compensation judgment.

"Generally, a party is not entitled to an award of attorney fees unless such an award is authorized by statute or by a specific contractual provision." *Wilkes v. Zurlinden,* 328 Or 626, 631, 984 P2d 261 (1999). As noted, 229 Or App at 17 n 1, Measure 37 was enacted through the initiative process in 2004 and ultimately codified as ORS 197.352. Thus, in construing ORS 197.352(6), we attempt to discern the voters' intent by examining the text and context of the statutory provision, which is the "best evidence" of that intent, *Oregon State Denturist Assn. v. Board of Dentistry,* 172 Or App 693, 700, 19 P3d 986 (2001), as well as any pertinent legislative history proffered by a party, *see State v. Gaines,* 346 Or 160, 171-72, 206 P3d 1042 (2009) (when interpreting a statute, to determine legislative intent, a court examines the text and context of the statute as well as pertinent legislative history proffered by a party). Relevant history includes the ballot title and explanatory statement in the voters' pamphlet. *See Shilo Inn v. Multnomah County,* 333 Or 101, 129-30, 36 P3d 954 (2001), *modified on recons,* 334 Or 11, 45 P3d 107 (2002).

With those principles in mind, we turn to the text of the statute that governed entitlement to attorney fees in Measure 37 cases. ORS 197.352(6) provided:

> "If a land use regulation continues to apply to the subject property more than 180 days after the present owner of the property has made written demand for compensation under this section, the present owner of the property, or any interest therein, shall have a cause of action for compensation under this section in the circuit court in which the real property is located, and the present owner of the real property *shall be entitled to reasonable attorney fees, expenses, costs, and other disbursements reasonably incurred to collect the compensation.*"

(Emphasis added.)

■ Our examination of that statute focuses on the phrase "reasonably incurred to collect the compensation," and, more specifically, begins with the plain and ordinary meanings of the pertinent words in that phrase—that is, the words "incurred" and "collect." "Incur" means to "become liable or subject to." *Webster's Third New Int'l Dictionary* 1146 (unabridged ed 2002). *See also White v. Jubitz Corp.*, 219 Or App 62, 67, 182 P3d 215, *rev allowed*, 345 Or 175 (2008) (reasoning that, based on the common definition of "incur," the "phrase 'reasonable charges necessarily incurred' is most sensibly understood to mean charges to which an injured party becomes *subject* at the time that the party receives care necessary to treat the party's injuries" (emphasis in original)); *Anderson v. Wheeler*, 214 Or App 318, 322, 164 P3d 1194 (2007) (reasoning that, in the context of ORS 36.425(4)(b), which provides an entitlement to "attorney fees * * * incurred" in certain arbitration proceedings, "the term 'incurred' takes on its ordinary meaning" and "means that attorney fees are recoverable only if a party has incurred them—that is, has become liable to pay them"). In turn, "collect," in this context, means "to present as due and receive payment for." *Webster's* at 444. Thus, our examination of the text of ORS 197.352(6) demonstrates that a landowner with a cause of action for compensation has a corresponding entitlement to attorney fees, expenses, and costs incurred to collect it—that is, attorney fees, expenses, and costs that the landowner becomes liable to pay in pursuing the cause of action.

That understanding is confirmed by the statement in Measure 37's ballot title that the measure "[c]reates [a] civil right of action including attorney fees." Official Voters' Pamphlet, General Election, Nov 2, 2004, 103. That statement indicates that a landowner is entitled to an award for attorney fees that the landowner becomes liable to pay as a result of pursuing the cause of action and that such an award is not limited to fees incurred only in a post-judgment enforcement proceeding.

In light of the text of the statute and its pertinent history, the county's assertions that English is not entitled to a fee under the statute because she "has not collected any compensation; she simply has liquidated the amount of her claim for compensation" is clearly untenable.

We note, moreover, the county's assertion that English had no entitlement to attorney fees is also predicated on two propositions that we rejected in *English I*. Specifically, here, as in *English I*, the county posits that (1) English's cause of action for compensation merely served to liquidate the amount of her Measure 37 just compensation claim and did not establish the county's liability to pay just compensation; and (2) the county had complete discretion to pay the compensation judgment such that English would never be entitled to "collect" the just compensation awarded in the compensation judgment. Our analysis and disposition in *English I* foreclose those contentions. *See* 227 Or App at 430 (reasoning that, in the compensation proceeding, the county had the opportunity to litigate whether it was in fact liable to pay just compensation; thus, claim preclusion principles barred them from litigating those issues in the mandamus proceeding). In sum, pursuant to ORS 197.352(6), English is entitled to an award of reasonable attorney fees that she became liable to pay as a result of pursuing her cause of action for just compensation.

■       Given that determination, we turn to whether the trial court erred in the amount of attorney fees, expenses, and costs that it awarded. Although ORS 197.352(6) created an entitlement to a recovery of attorney fees, that statutory entitlement is explicitly, textually limited to the amount the property owner *"incurred"*—that is, "became liable or subject

to"—in prosecuting the just compensation litigation. Thus, it is the fee agreement between English and Schwabe, which prescribes the fees for which English would be liable to pay Schwabe, that circumscribes English's statutory fee entitlement.

As noted, that agreement stated that Schwabe would work on a "contingent fee basis." However, it did not specify that English was obligated to pay Schwabe a particular percentage—much less one-third—of any eventual recovery.[8] Rather, the agreement stated only that, if certain objectives were achieved, English would be obligated to pay Schwabe's hourly rate for the hours expended as well as certain interest charges. Thus, as of the time that the trial court awarded attorney fees, English had "incurred"—that is, was obligated to pay Schwabe—fees based only on the hours her attorneys spent prosecuting this matter multiplied by their hourly billing rates plus interest. Nothing more, nothing less.[9] Consequently, the trial court's award of attorney fees based on a one-third contingency must be reversed because it did not comport with ORS 197.352(6) in that it awarded a fee that English had not incurred under the terms of the fee agreement.

English asserts, however, that such a disposition is unnecessary because the trial court's award was based on an alternative theory—that is, that the court's award was based on an analysis of the hours expended and the rates charged. We disagree that the court based its award on that alternative rationale. The court clearly indicated that it was awarding a customary one-third contingent fee and that its examination of the hours expended and the rates charged merely supported its view that "the one-third contingency is a reasonable number." Accordingly, although English is entitled to an award of attorney fees pursuant to ORS 197.352(6),

---

[8] Given that design and content, the fee agreement between English and Schwabe was not the type of contingent fee agreement contemplated by ORS 20.340, which specifically requires that "the attorney receives as a fee a percentage of the amount of any settlement or judgment awarded to the plaintiff[.]"

[9] That amount would represent the maximum possible award under ORS 197.352(6), subject to reduction based on a judicial determination that certain fees were not, in the words of the statute, *"reasonably* incurred." (Emphasis added.)

the trial court erred in its determination of the amount awarded.

We then turn to the remaining issue on appeal—that is, whether the undefined reference to "expenses" in ORS 197.352(6) entitled plaintiff to recover expert witness fees in this case and, if it did, whether the fees were necessary to the prosecution of English's Measure 37 claim. As previously noted, ORS 197.352(6) authorized an award of "reasonable attorney fees, *expenses*, costs, and other disbursements * * *." (Emphasis added.) The term "expenses" was not defined in the statute. For that reason, the county contends that the default definition of costs and disbursements in ORCP 68 controls, and, because expert witness fees are not recoverable under ORCP 68, they are not recoverable pursuant to ORS 197.352(6).

In support of its position, the county cites *Malot v. Hadley*, 102 Or App 336, 794 P2d 833 (1990). In that case, the plaintiffs sought attorney fees and costs under a provision of a promissory note that provided that, " '[i]f this note is placed in the hands of an attorney for collection, we, jointly and severally, agree to pay the reasonable fees and expenses of such attorney * * *.' " *Id.* at 340. In its award of costs and disbursements, the trial court, in *Malot*, included a $248.21 payment to a court reporter for deposition services. *Id.* at 342. The defendant asserted that that award was improper. We reasoned that,

> "[i]n the promissory note, defendants agreed to pay 'the reasonable * * * expenses' of the noteholders' attorney. The proper analysis is to determine what the parties intended by the term 'expenses.' In the absence of language evidencing a contrary intent, we think it reasonable to conclude that the parties intended the undefined contractual term 'expenses' to mean those costs and disbursements provided for by statute or rule at the time the cost bill was submitted."

*Id.* (omission in original). Accordingly, because ORCP 68 A(2) did not define "costs and disbursements" to include deposition charges, and because the parties cited no other rule or statute that would permit recovery of those charges, we held

that the trial court erred when it included the deposition costs in its award. *Id.*

Notwithstanding the county's invocation of *Malot*, our opinion there is not conclusive here. The terms of the promissory note at issue in *Malot* referred to the "reasonable fees and expenses" of the attorney into whose hands the note was placed for collection. Under that circumstance, we concluded that the parties to the agreement intended the term "expenses" to mean costs and disbursements, which was not referenced in the agreement. *Malot*, 102 Or App at 342. In this case, unlike in *Malot*, ORS 197.352(6) referred to "reasonable attorney fees, expenses, costs, and other disbursements * * *." Because the statute already provided for an award of "costs" and "other disbursements," the inclusion of the term "expenses" indicates that the voters intended a landowner to recover litigation-related expenditures beyond "costs and disbursements" as defined in ORCP 68 A. To conclude otherwise would render the inclusion of the term "expenses" in ORS 197.352(6) meaningless. *See* ORS 174.010 (providing that, in construing a statute, the court is not "to omit what has been inserted"); *State v. Mayes*, 220 Or App 385, 389, 186 P3d 293 (2008) (reasoning that, when interpreting a statute, we "give effect to all relevant provisions" and assume that "the legislature did not intend any portion of its enactments * * * to be meaningless surplusage").

To avoid that result, we look to the meaning of the term "expenses" in the context of similar statutes. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (reasoning that the court may consider "the context of the statutory provision at issue, which includes other provisions of the same statute and other related statutes"). English asserts that the definition of the term "expenses" as used in ORS 35.335 is useful context for our interpretation of the term "expenses" in this case. We agree. ORS 35.335(1) provides that, after the abandonment of a condemnation action by a condemnor, a defendant shall recover the "costs and disbursements in the action" and "reasonable attorney fees and reasonable expenses as determined by the court." In turn, ORS 35.335(2) defines "expenses" as the "costs of appraisals and fees for experts incurred in preparing and

conducting the defense to the action."[10] Accordingly, we agree with the trial court that the term "expenses" in the statute permits English to recover her expert witness fees.

■        Finally, the county asserts that certain witness fees were unnecessary. Specifically, the county argues:

> "In the proceeding below, [English] put forth no basis in fact or law to seek recovery of these development costs and expert fees. Instead, plaintiff simply identified any possible expense associated to her Measure 37 claim, and then passed those expenses on to Multnomah County. Those expenses were not limited solely to actual witnesses, but to the costs for tasks performed on the property itself. For example, plaintiff sought, and the court ultimately awarded recovery for surveys, traffic counts, septic permit fees, excavation on the property, and engineering services."

(Footnote omitted.) In its response to the county's objections in the trial court, English countered:

> "In order to prosecute her claim for compensation under Measure 37, [English] needed to demonstrate the reduction in the value of her property caused by the regulations. This necessitated comparing the fair market value of the property both with and without the regulations. In order to determine fair market value of the property without the regulations, [English] needed to demonstrate what could feasibly be developed on the property in the absence of the regulations. Market value of the property is driven by what can feasibly be developed on the property given market conditions, topography and other such factors, and [English] reasonably incurred expert witness fees of engineers, developers, and appraisers to build its case on these issues. In addition, the [county] has changed its position regarding the regulations that it would or would not waive on several occasions, both in settlement discussions and in its formal

---

[10] Similarly, in other contexts, we have concluded that a statutory reference to the recovery of "expenses" includes expert witness fees. *See Taylor and Taylor*, 193 Or App 694, 698, 92 P3d 124 (2004) (noting that "ORS 107.105(1)(i) (1999) provided that, when a court granted a judgment of dissolution, it also could enter a judgment against one party in favor of the other for 'any further sums as additional attorney fees or additional costs and *expenses of suit or defense* as the court finds reasonably and necessarily incurred by such party' "; holding that the statutory language authorized "the trial court to award an expert witness fee as an expense of suit or defense" (emphasis in original)).

Board Orders. Each such change has necessitated review of the impacts of the [c]ounty's changes by [English's] experts."

We agree with English that the expert witness fees that she requested were necessary in the evolving context of the litigation surrounding her Measure 37 claim. Accordingly, we agree with the trial court that English was entitled to the expert witness fees that she sought.

In sum, although English is entitled to an award of attorney fees under ORS 197.352(6), the trial court erred in fixing that fee as one-third of the amount awarded in compensation judgment because, as of the time the court awarded fees, English was not liable to pay that amount. For that reason, although we affirm the trial court's award of expenses, costs, and other disbursements, which included expert witness fees, incurred in the underlying case and in litigating English's attorney fee petition, we reverse the award of attorney fees and remand to the trial court for reconsideration.[11]

Supplemental judgment reversed and remanded for reconsideration of attorney fee award; otherwise affirmed.

---

[11] Given that disposition, we do not address the county's remaining arguments, including those pertaining to the reasonableness of the fees sought and awarded.