On relator-appellant's petition and amended petition for attorney fees and request for findings under ORAP 13.10(7), and statement of costs and disbursements filed May 13, and July 30; defendants' objections to relator-appellant's petition and amended petition for attorney fees and request for findings under ORAP 13.10(7) filed May 27, and August 12; and relator-appellant's replies in support of petition and amended petition for attorney fees and request for findings under ORAP 13.10(7), and statement of costs and disbursements filed June 17, and August 26 (opinion filed April 15, 2009, 227 Or App 419, 206 P3d 224); petition for attorney fees and costs and disbursements allowed in the amount of $191,289.30 in fees, $2,940.00 in expenses, and $691.82 in costs and disbursements October 7, 2009

STATE ex rel Dorothy ENGLISH,
Deceased,
by and through Douglas James Sellers,
Personal Representative of
the Estate of Dorothy English, Deceased,
*Relator-Appellant,*

*v.*

MULTNOMAH COUNTY,
a public corporation
incorporated in the State of Oregon;
Carol Ford, in her capacity as
Director of the Department of County Management
for Multnomah County;
and Mindy Harris, in her capacity as
Finance Officer for Multnomah County,
*Defendants-Respondents.*

Multnomah County Circuit Court
070708042; A137217

219 P3d 594

D. Joe Willis, Michael T. Garone, Andrew Lee, and Schwabe, Williamson & Wyatt, P. C., for petition.

Agnes Sowle, County Attorney, and Stephen L. Madkour, Assistant County Attorney, for response.

Before Haselton, Presiding Judge, and Edmonds, Judge, and Rosenblum, Judge.

HASELTON, P. J.

## HASELTON, P. J.

In *State ex rel English v. Multnomah County*, 227 Or App 419, 206 P3d 224 (2009) (*English I*), relator Dorothy English appealed a judgment dismissing an alternative writ of mandamus against defendants.[1] English sought mandamus to compel the county to satisfy a final judgment for $1,150,000 in just compensation pursuant to ORS 197.352 (2005) (commonly known as Measure 37).[2] On appeal, we reversed the judgment and remanded the case to the trial court for issuance of a peremptory writ of mandamus directing the county to pay the judgment.

English now petitions for her attorney fees and costs and disbursements incurred on appeal in *English I*. She invokes ORS 197.352(6), Measure 37's attorney fee provision, and ORS 19.440, the statute providing an entitlement to attorney fees on appeal under the circumstances here. *See* 231 Or App at 295, 295 n 9 (quoting text of pertinent statutes). The county objects, contending that, (1) as a matter of law, English is not entitled to either all or some of the attorney fees that she requests; and (2) alternatively, if English is entitled to attorney fees, the requested fees are excessive and

---

[1] As we explained in *English I*,

"English brought the mandamus proceeding against defendants Multnomah County, Carol Ford in her capacity as Director of the Department of County Management for Multnomah County, and Mindy Harris in her capacity as Finance Officer for Multnomah County. English died after initiating an appeal from the judgment entered in the mandamus proceeding, and the Appellate Commissioner granted a motion to substitute the personal representative of English's estate as the real party in interest. ORCP 34 B(1); ORAP 8.05."

227 Or App at 421 n 1. To resolve the issues in this petition, we must refer to prior litigation between English and Multnomah County in which Ford and Harris were not named as defendants. Thus, for purposes of clarity, rather than refer to the parties based on their designations in the trial court, we refer to relator as "English," and defendants, either individually or collectively, as "the county."

[2] As context for our discussion, Ballot Measure 37 (2004), which was enacted through the initiative process and codified as *former* ORS 197.352 (2005), *amended by* Oregon Laws 2007, chapter 424, section 4, *renumbered as* ORS 195.305 (2007), provided, generally, that public entities that enacted or enforced land use regulations that adversely affected the fair market value of a claimant's property either had to pay just compensation or waive the offending regulations. In 2007, the voters passed Ballot Measure 49, Oregon Laws 2007, chapter 424, which "extinguish[ed] and replace[d] the benefits and procedures that Measure 37 granted to landowners." *Corey v. DLCD*, 344 Or 457, 465, 184 P3d 1109 (2008). Throughout this opinion, all references to ORS 197.352 are to the 2005 version of that statute.

unreasonable. For the reasons explained below, we allow the petition for attorney fees and costs and disbursements in the amount of $191,289.30 in fees, $2,940.00 in expenses, and $691.82 in costs and disbursements.

In previous opinions, we have described in detail the facts underlying the parties' litigation.[3] Nonetheless, to provide context for resolving the issues presented in this petition, we pause briefly to recount the material, procedural facts:

"In December 2004, English filed a written demand with the county for $1,150,000 in just compensation pursuant to Measure 37. Thereafter, in May 2006, dissatisfied with the county's resulting waiver, English filed her complaint for just compensation in the trial court.

"After the parties filed cross-motions for summary judgment, the trial court granted English's motion for summary judgment as to all liability issues and denied the county's cross-motion. The parties then stipulated to the amount of just compensation, and, in late December 2006, the trial court entered a judgment [awarding $1,150,000 in just compensation.][4]

"* * * * *

"In January 2007, the county appealed the compensation judgment to this court. In February, the county filed a motion to dismiss its appeal, and we subsequently granted the county's motion and, consequently, issued an appellate judgment terminating that appeal."

*English v. Multnomah County*, 229 Or App 15, 19, 209 P3d 831 (*English II*), adh'd to as modified on recons, 230 Or App 125, 213 P3d 1265 (2009) (*English III*) (footnote omitted).

Also in January 2007, English sought attorney fees, expenses, and costs and disbursements incurred in the trial court under ORS 197.352(6). In April 2007, the trial court

---

[3] *See English I*, 227 Or App at 421-25; *English v. Multnomah County*, 229 Or App 15, 17-23, 209 P3d 831 (*English II*), adh'd to as modified on recons, 230 Or App 125, 127-28, 213 P3d 1265 (2009) (*English III*).

[4] For ease of reference, throughout this opinion, we refer to the original proceeding as the "compensation proceeding" and the judgment that English obtained in that proceeding as the "compensation judgment."

entered a supplemental judgment awarding English a customary contingent fee of approximately $383,000, which represented one-third of the amount of just compensation awarded in the compensation judgment. The county appealed that judgment, which became the subject of our decision in *English II.*

Thereafter, in June 2007, while *English II* was pending in this court,

"English sought satisfaction of the money award in the compensation judgment pursuant to ORS 30.390. When the county refused to pay, English sought a writ of mandamus. The trial court granted the county's motion to dismiss the alternative writ of mandamus on the ground that, under ORS 197.352, the county had complete discretion as to whether to satisfy the judgment."

*English II*, 229 Or App at 23. English appealed the judgment in the mandamus proceeding, which became the subject of our decision in *English I.*

We decided the appeals in *English I* and *English II* earlier this year. In April, we issued our decision in *English I* and reversed the trial court's judgment in the mandamus proceeding and remanded the case to the trial court with instructions to issue a peremptory writ of mandamus directing the county to pay the judgment of $1,150,000 in just compensation. Then, in June, we issued our decision in *English II*, in which,

"[a]lthough we rejected the county's contentions that the appeal was moot and that English was not entitled to attorney and expert witness fees, we agreed with the county that the trial court had erred in determining that English should recover attorney fees in an amount commensurate with a one-third contingency. For that reason, we reversed and remanded the attorney fee award to the trial court for reconsideration and redetermination of the attorney fees that English had *actually reasonably incurred*, but otherwise affirmed the supplemental judgment on appeal."

*English III*, 230 Or App at 127-28 (emphasis added).[5]

---

[5] English petitioned for reconsideration in *English II*. We allowed reconsideration and issued an additional decision, *English III*, in which we adhered to our former opinion but modified the prevailing party designation to designate English as the prevailing party on appeal. 230 Or App at 131. Our ultimate designation, in

With that factual background in mind, we return to English's present petition concerning her entitlement to attorney fees incurred on appeal in *English I*—that is, the appeal from the judgment in the mandamus proceeding. After English had filed her initial petition for attorney fees and costs and disbursements in this matter and the county had filed its initial objections, we issued an order requiring clarification of the petition. We did so because English had requested attorney fees incurred not only in prosecuting the appeal in *English I* but also in litigating the mandamus proceeding *in the trial court*. In response to our order, English filed an amended petition, and the county filed amended objections.

In her amended petition, English seeks $203,765.37, itemized as $200,133.55 in attorney fees, $2,940.00 in expenses, and $691.82 in costs and disbursements.[6] English asserts that the requested fees are reasonable, both in their totality, when assessed in light of the criteria prescribed in ORS 20.075, and with respect to particular services rendered. She submits expert testimony substantiating that position. Further, she requests that we make findings pursuant to ORAP 13.10(7) in support of our decision.[7]

The county objects, asserting four basic arguments: (1) The petition for attorney fees must be dismissed as moot in light of the enactment of Measure 49. (2) If we award English attorney fees, the award must be limited to fees incurred before ORS 197.352(6) was repealed by Measure 49. (3) English is not entitled to attorney fees because the trial court's contingent fee in *English II* included the attorney fees requested in this petition. (4) The requested fees are excessive and unreasonable for a variety of reasons, and a reasonable fee would not exceed $70,000.

---

*English III*, of English as the prevailing party in *English II* does not affect our resolution of the issues in this petition concerning her entitlement to attorney fees incurred on appeal in *English I*.

[6] The $200,133.55 in attorney fees represents the $195,296.80 requested in the amended petition and an additional $4,836.75 requested in the amended reply for the preparation of that document.

[7] ORAP 13.10(7) provides, in part, that "[a] party to a proceeding under this rule may request findings regarding the facts and legal criteria that relate to any claim or objection concerning attorney fees."

■    Because it implicates our jurisdiction, we begin by addressing the county's contention that any claim for attorney fees is moot because, after the enactment of Measure 49, "the statutory basis for recovery of attorney fees[, ORS 197.352(6), was] no longer in effect." More specifically, we understand the county to assert, by its reference to *Corey v. DLCD*, 344 Or 457, 184 P3d 1109 (2008), that, because Measure 49 applies to all Measure 37 claims—that is, the claims that served as the predicate for fee entitlement under ORS 197.352(6)—and superseded the provisions of Measure 37, any decision concerning English's entitlement to attorney fees will have no effect on the parties. Consequently, the county concludes, "the claim for attorney fees is no longer justiciable and should be dismissed as moot."

■    "If it becomes clear in the course of a judicial proceeding that resolving the merits of a claim will have no practical effect on the rights of the parties, this court will dismiss the claim as moot." *Corey*, 344 Or at 464. The county's arguments concerning the justiciability of the petition for attorney fees at issue here are, in their essential premises, the same arguments that the county raised—and that we rejected—in the contexts of *English I* and *English II*.

■    To determine whether this petition concerning English's appellate attorney fees is moot, we apply a basic principle articulated in *English II*: "When the dispute *involving a predicate Measure 37 claim for just compensation* is ongoing (whether in another forum or on appeal), Measure 49 supersedes the Measure 37 claim and requires the parties to proceed under the new standards in Measure 49 to determine their rights."[8] *English II*, 229 Or App at 26 (emphasis added). Applying that principle to this petition for attorney fees, we conclude, as we did in *English I* and *English II*, that the current dispute, pertaining to attorney fees, is not moot.

---

[8] *See also Bleeg v. Metro*, 229 Or App 210, 217, 211 P3d 302 (2009) (applying the basic principle from *English II* and holding that, because the subject of the appeal was the ongoing dispute concerning the plaintiffs' Measure 37 claims for just compensation, Measure 49 superseded those claims and deprived the trial court's judgments of continuing viability).

As we explained in *English II*,

"in February 2007, when the county dismissed its appeal from the compensation judgment over nine months before the effective date of Measure 49 and we issued an appellate judgment, the county had exhausted its opportunities for appellate review. Consequently, there was a final judgment conclusively adjudicating the Measure 37 claim for just compensation and that claim was extinguished. By that point, there was no ongoing dispute concerning English's Measure 37 claim for just compensation—the claim that was the predicate for English's fee entitlement. Thus, *because this appeal does not involve an ongoing dispute concerning English's Measure 37 claim for just compensation, which Measure 49 would otherwise obviate,* our resolution of English's entitlement to fees and costs pursuant to ORS 197.352(6) will have a practical effect on the parties."

229 Or App at 26-27 (emphasis added). For the same reasons, our resolution of English's entitlement to appellate fees and costs here pursuant to ORS 197.352(6) will have a practical effect on the parties. Accordingly, the petition is not moot.

Our reasoning in *English I* and *English II* also forecloses the county's related, alternative contention that, if the petition is not moot and English is entitled to fees, the fees are limited to those incurred before ORS 197.352(6) was repealed by Measure 49. The premise underlying the county's contention is that Measure 49 superseded English's Measure 37 claim and entitlement to fees that was predicated on that claim. As we have previously explained in *English I* and *English II*, Measure 49 did not have that effect in this case because, by the time Measure 49 became effective, there was no ongoing dispute concerning English's claim for just compensation. *See English I*, 227 Or App at 426-28; *English II*, 229 Or App at 24-27. Accordingly, the county's contention that English is not entitled to fees incurred after Measure 49 became effective is incorrect.

The county's final contention concerning English's lack of entitlement to her appellate attorney fees is that, because the trial court awarded a customary contingent fee of one-third the amount of the compensation judgment—that is, approximately $383,000—and "*any* attorney fees would be

included in that one-third percentage," this petition is "nothing more than a second attempt to collect additional attorney fees based on the same set of facts." (Emphasis added.) Again, the county's argument is foreclosed by our decision in *English II*. In that case, we reversed the trial court's "award of attorney fees based on a one-third contingency * * * because it did not comport with ORS 197.352(6) in that it awarded a fee that English had not incurred under the terms of the fee agreement." *English II*, 229 Or App at 30. Thus, our reversal of the contingent fee award and our remand to the trial court for redetermination of the attorney fees that English actually, reasonably incurred is fatal to the county's contention that the (erstwhile) contingent fee award in *English II* included the fees requested here. In sum, we conclude that English is entitled to attorney fees on appeal.

We turn, finally, to the county's objections regarding the general and particular reasonableness of the fees sought. Before doing so, however, we pause briefly to discuss the legal framework within which we analyze those objections. ORS 197.352(6), the statute that governed entitlement to attorney fees in Measure 37 cases, provided:

> "If a land use regulation continues to apply to the subject property more than 180 days after the present owner of the property has made written demand for compensation under this section, the present owner of the property, or any interest therein, shall have a cause of action for compensation under this section in the circuit court in which the real property is located, and the present owner of the real property shall be entitled to reasonable attorney fees, expenses, costs, and other disbursements reasonably incurred to collect the compensation."[9]

In *English II*, we interpreted ORS 197.352(6) and held that the statute

---

[9] Although ORS 197.352(6) does not expressly address a landowner's entitlement to attorney fees on appeal, ORS 19.440 provides that entitlement:

> "Any statute law of this state that authorizes or requires the award or allowance of attorney fees to a party in a civil action or proceeding, but does not expressly authorize or require that award or allowance on an appeal in the action or proceeding and does not expressly prohibit that award or allowance on an appeal, shall be construed as authorizing or requiring that award or allowance on an appeal in the action or proceeding."

"demonstrate[d] that a landowner with a cause of action for compensation has a corresponding entitlement to attorney fees, expenses, and costs incurred to collect it—that is, attorney fees, expenses, and costs that the landowner becomes liable to pay in pursuing the cause of action."

229 Or App at 28. We also reasoned that, "[a]lthough ORS 197.352(6) created an entitlement to a recovery of attorney fees, that statutory entitlement is explicitly, textually limited to the amount the property owner *incurred*—that is, became liable or subject to—in prosecuting the just compensation litigation." *Id.* at 29-30 (internal quotation marks omitted; emphasis in original). Further, we noted that the fee agreement between English and her attorneys established the amount of fees for which English would be liable and that "[t]hat amount would represent the maximum possible award under ORS 197.352(6), subject to reduction based on a judicial determination that certain fees were not, in the words of the statute, *'reasonably* incurred.' (Emphasis added.)" *Id.* at 30 n 9.

In other words: (1) The fees recoverable cannot *exceed* the amount of English's fee liability under her agreement with her attorneys; and (2) to the extent fees were not reasonably incurred, defendant was liable only for the commensurately reduced amount. In making that determination, we refer to the myriad, albeit nonexclusive, *see* ORS 20.075(1)(h), factors set out in ORS 20.075.[10]

---

[10] ORS 20.075 provides, in part:

"(1) A court shall consider the following factors in determining whether to award attorney fees in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees:

"* * * * *

"(b) The objective reasonableness of the claims and defenses asserted by the parties.

"* * * * *

"(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

"* * * * *

"(h) Such other factors as the court may consider appropriate under the circumstances of the case.

"(2) A court shall consider the factors specified in subsection (1) of this section in determining the amount of an award of attorney fees in any case in which

Here, the fee agreement between English and her attorneys provided that, if the attorneys were successful "in collecting the $1,150,000 [compensation] judgment," they would request "an additional award of fees for doing that." The agreement further provided that, if the attorneys were successful in obtaining fees, "[they] would look only to what the Court awards. If not, [they] would charge [English] at [their] regular hourly rates for that additional work, but would collect only from proceeds [they] collect[ed] for [English] from the $1,150,000." Thus, as in *English II*, here, English is obligated to pay her attorneys' hourly rates for the hours expended.[11] Accordingly, English's attorneys have submitted their billing statements that itemized the hours expended in the course of the appeal from the mandamus proceeding.

The gravamen of the county's objections to those requested fees is that, when viewed overall, English's attorneys billed an unreasonable and excessive number of hours at unreasonable rates. Although the county identified pages of entries within the billing statement that it "submits are excessive," the county does not explain why or how those specific entries evince systematic overbilling at unreasonable rates. Further, the county did not submit any affidavit from a disinterested expert corroborating its generic assertion. *See, e.g., Computer Concepts, Inc. v. Brandt*, 141 Or App 275, 280, 918 P2d 430 (1996) (Haselton, J., concurring) (recognizing

which an award of attorney fees is authorized or required by statute. In addition, the court shall consider the following factors in determining the amount of an award of attorney fees in those cases:

"(a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

"* * * * *

"(c) The fee customarily charged in the locality for similar legal services.

"(d) The amount involved in the controversy and the results obtained.

"(e) The time limitations imposed by the client or the circumstances of the case."

[11] The fee agreement at issue in *English II* also provided that, in addition to the hourly rate, English was also liable to pay a nine percent standard interest charge for deferred payment. The fee agreement that governed the mandamus proceeding did not expressly indicate that English would be liable for standard interest charges. For that reason, English is not attempting to collect such interest here as part of her attorney fees.

that, where the reasonableness of requested attorney fees is disputed, submissions by disinterested appellate practitioners are helpful). Instead, the county notes a couple of examples that illustrate its contention and implicitly invites us to comb the identified entries throughout the billing statement to determine whether and how they support the county's position.

We decline the county's invitation to do so. *See generally Berger Farms v. First Interstate Bank*, 330 Or 16, 20 n 3, 995 P2d 1159 (2000) ("We continue to emphasize, however, that a party objecting to a request for attorney fees who fails to set out its objection with particularity does so at its own peril."); *Kahn v. Canfield*, 330 Or 10, 13-14, 998 P2d 651 (2000) (reasoning that, where a party files a petition for fees that comports with ORAP 13.10(5), "our inquiry into the request generally will be limited to the objections that are filed by the party opposing the petition"); *Dockins v. State Farm Ins. Co.*, 330 Or 1, 9, 997 P2d 859 (2000) ("In the ordinary case, we are loath to undertake a wide-ranging, independent review of a petitioner's request for attorney fees, inasmuch as any questions or doubts that we might have might not be shared by the objecting party."). *Cf. Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to as clarified on recons*, 187 Or App 472, 68 P3d 259 (2003) (noting generally that, "it is not this court's function to speculate as to what a party's argument might be" or "to make or develop a party's argument when that party has not endeavored to do so itself"). Nonetheless, our examination of the requested fees indicates that, except for the fees that English requested for preparation of the amended petition and amended reply, the requested fees are reasonable.

Here, we find that the time and labor required to litigate the novel legal issues presented by Measure 37, as affected by the eventual passage of Measure 49, were substantial and required experienced counsel. *See* ORS 20.075(2)(a). Because of the evolving legal context in which these parties were litigating, to adequately protect English's interests, her attorneys spent a reasonable amount of time, among other things, (1) researching legal issues; (2) studying new case law and statutory authority; (3) preparing court

documents; (4) conferring periodically so as to coordinate efforts with other attorneys involved in Measure 37 and Measure 49 litigation and reviewing the submissions in other, related cases; and (5) engaging in discussions with prospective *amici curiae*.

The county further challenges, as unreasonably duplicative, the involvement of multiple attorneys in prosecuting this appeal—that is, in various instances multiple attorneys prepared, reviewed, and refined court documents; engaged in strategy sessions; and participated in oral argument-related activities. English's attorneys explained that, to best represent their client, they adopted a "team" approach in which, generally, two attorneys, including an appellate specialist, oversaw the legal work of other attorneys and developed key strategies and made final decisions. We conclude that such an approach is not *per se* unreasonable and that, in the totality of the circumstances of this case, such an approach was reasonable to ensure that English's legal issues were adequately and cogently presented to the court.

The county next asserts that the hourly rates of English's attorneys were unreasonable. Both English and the county rely on published surveys concerning billing rates to support their respective positions. In addition, English also submits an affidavit from Thomas H. Tongue, an experienced attorney, corroborating the reasonableness of the time billed and the hourly rates. Specifically, Tongue concluded that the rates were reasonable for various reasons including the "enhanced difficulty" of the legal issues presented, English's attorneys' "qualifications," and his "review of the work they performed." Based on our review and in light of Tongue's expert opinion, we conclude that English's attorneys' hourly billing rates were within a "reasonable" range.[12] *See* ORS 20.075(2)(c).

We emphasize, finally, that, although the services rendered by English's attorneys were extremely intensive—indeed, exhaustive—their efforts were necessitated by the county's obdurate refusal to satisfy the just compensation

---

[12] One is loath to characterize billing rates of more than $300 an hour—or, even exceeding $400 an hour—as "reasonable." We use the term in its relative, not absolute, sense.

judgment that had been rendered final by the county's dismissal of its own appeal from that judgment. It is not unfair to say that this became a war of attrition that should never have had to have been fought. In sum, the county's conduct has protracted this litigation, *see* ORS 20.075(1)(b), (e), and created additional work in a case that required prompt resolution due to English's advanced age and ultimately, after her death during the pendency of this appeal, the substitution of the personal representative of her estate as the real party in interest, *see* ORS 20.075(2)(e). In the end, English obtained a result in *English I* that she accurately describes as "ensur[ing her] recovery of $1.15 million, a complete victory." *See* ORS 20.075(2)(d). For all of those reasons, we conclude that, with two limited exceptions specified in the following paragraphs, English's requested fees were reasonably incurred and are, hence, recoverable under ORS 197.352(6).[13]

■ We turn then to those two exceptions. First, we decline to allow English's request for $4,007.50 in attorney fees to prepare the *amended* petition. English necessitated the filing of an amended petition by erroneously including in her original petition not only fees for appellate services but also fees incurred in the mandamus proceeding in the trial court. That error was entirely of English's attorneys own making, and the cost of the consequent additional work should not be borne by the county. *See* ORS 20.075(1)(e).

Second, given English's attorneys' default in that regard, it was hardly surprising that the county would file amended objections to the amended petition, which, in turn,

---

[13] In its objections to the amended petition, the county specifically contends that the increase in the fees requested for attorneys Garone and Lee was "inexplicable." In response, English explains that the increase is attributable to the fact that the original petition contained a request for fees through the date that we issued our opinion in *English I*—that is, April 15, 2009—and the amended petition contained a request for fees through the date of the filing of that document—that is, July 30, 2009. Based on our review of the entries, we accept that representation.

Further, the county points to several entries that are also included in English's pending petition for appellate attorney fees in *English II*. The county objects to "what appears to be an effort of double recovery through duplicative entries." English remonstrates that the entries reflect "tasks common to both" the appeals in *English I* and *English II*, such that "the time was divided equally between the two cases." Based on our review of the entries, we accept that representation.

might require a reply. But for the failure of English's attorneys to initially, properly, separate appellate from nonappellate work, there would have been no need to file a reply to the county's amended response. Again, the county should not reasonably bear the cost of that work—that is, $4,836.75.

Accordingly, English's requested attorney fees must be reduced by $8,844.25, representing the total fees attributed to those two matters. In sum, we allow English's petition for attorney fees and costs and disbursements in the amount of $191,289.30 in fees, $2,940.00 in expenses, and $691.82 in costs and disbursements.

Petition for attorney fees and costs and disbursements allowed in the amount of $191,289.30 in fees, $2,940.00 in expenses, and $691.82 in costs and disbursements.